WILCOX & GIBBS SEWING-MACHINE CO. *v.* THE GIBBENS FRAME.

*(Circuit Court, S. D. New York.   August 4, 1883.)*

1. TRADE-MARK — FORM OR SHAPE OF PATENTED MACHINE — EXPIRATION OF PATENT.
   While no one has the right to make and sell his own wares as the wares of another, every one has the right to make and sell any wares not protected by patents; and a manufacturer of a patented article, after the expiration of the patent, has a right to represent that it was made according to the patent, and to use the name of the patentee for that purpose.

2. SAME—RIGHT TO USE FORM OR SHAPE OF MACHINE.
   Where frames for sewing-machines in the form of the letter G have been so extensively manufactured and sold by the inventor, during the time they were protected by patents, that the machines containing this feature come to be known in the trade thereby, after the expiration of the patents, the patentee cannot, by claiming such form or shape of frame as a trade-mark, prevent others from using such frames in sewing-machines manufactured and sold by them.

3. SAME—MARK DESCRIPTIVE OF QUALITY OR STYLE.
   Anything descriptive of the properties, style, or quality of an article merely, is open to all.

In Equity.
*Stephen A. Walker* and *A. C. Brown,* for orator.
*J. Hampden Dougherty* and *Joseph C. Fraley,* for defendant.

WHEELER, J.   This suit was brought in the supreme court of the state to restrain the use of frames in sewing-machines in the shape of the Roman capital letter G.   A preliminary injunction restraining such use until further order was granted *ex parte;* and before further proceedings the cause was removed to this court.   It has now been heard on motion to dissolve this injunction.

As the case now stands it appears that letters patent No. 21,129 were granted to James E. A. Gibbs, under date of August 10, 1858, for improvements in sewing-machines, the drawings and model of which showed this frame, but it was not claimed as a part of the patented invention; that design letters patent No. 1,206, under date of February 21, 1860, were granted to him for this form of frame; that upon the surrender of the original patent No. 21,129, reissued letters patent No. 2,655, under date of June 18, 1867, were granted to him, in which this shape of frame was particularly described, and its advantages set forth as, "which not only stamps it with a peculiar character, but is also exceedingly useful, as it affords the greatest possible space for the cloth or material to be sewed of being turned and twisted under the needle and upon the table;" and there was claimed as a part of the patented invention, "combining with the vibrating needle-arm a frame-shape substantially like the Roman letter G, as herein shown and described, and for the purposes set forth." The orator operated under these patents until they expired,—the design patent, February 21, 1867, and the reissue patent, August 10, 1872.   The orator registered this form of the frame as a trade-mark, and obtained certificate No. 8,356, dated from June 14, 1881, in the

declaration for which it is stated that "this trade-mark has been used continuously in the business of the said company since the year 1859." The orator manufactured and sold sewing-machines having this form of frame so extensively and for such length of time, while others were excluded from doing so, that its machines came to be known in the trade by this feature. The defendant makes and sells machines with the same style of frame, which, to some extent, indicates to those not informed that his machines are of the orator's make.

The question now is whether the defendant has the right to continue such use of this form of frame, or the orator has the right to have him restrained from such use. This frame is an essential part of these sewing-machines, as it supports most of the moving parts of the machinery in the proper place for doing their work. This form of frame has some advantages over others, in that it requires less room for itself in proportion to the room afforded by it for the other parts and the material sewed, as described in the patent for it. Sewing-machines made with these frames, otherwise good, were good machines. The frames in this form were a part of the manufacture to be identified as to source, and not an identifying mark, merely, of source, indifferent to the manufacture. The orator, in the use of this frame, made a good machine in this respect. Without the protection of a patent, however, the orator could not, by making good machines, either in form or style or other respects, exclude others from making the like in either or all of these particulars; in the first instance, certainly. Not until a feature had been used long enough to be known as a mark of the orator's machines, could the employment of it by others be a representation that their machines were the orator's. At common law this form was open to everybody, and, but for the exclusive use conferred by the patents, it might have been employed by others so extensively that the employment of it by the orators would not have amounted to any representation at all that machines having it were of the orator's make. The exclusive rights of the orator, up to the time of the expiration of the patents, appear to have rested upon the patents, and not upon any right acquired independently of the patents. All rights acquired under the patents expired with them.

Congress was given power to promote the progress of science and useful arts, "by securing for limited times, to authors and inventors," the exclusive right to their writings and discoveries. Const. art. 1, § 8. The grant to the inventor of the exclusive right for the limited time is in consideration of the benefit which the public will derive from the invention after the expiration of the term. *Grant* v. *Raymond*, 6 Pet. 218. Whatever was patented to the inventor, and enjoyed by him and those operating under him during the term, belongs to the public and is free to all at the expiration of the term. Accordingly, a manufacturer of a patented article, after the expiration of

the patent, has a right to represent that it was made according to the patent, and to use the name of the patentee for that purpose. *Fairbanks* v. *Jacobus,* 14 Blatchf. 337; *Singer Manuf'g Co.* v. *Stanage,* 6 FED. REP. 279; *Singer Manuf'g Co.* v. *Riley,* 11 FED. REP. 706; *Singer Manuf'g Co.* v. *Loog,* 48 Law T. Rep. (N. S.) 3; 15 Reporter, 538. Anything descriptive of the properties, style, or quality of the article merely, is open to all. *Canal Co.* v. *Clark,* 13 Wall. 311; *Manuf'g Co.* v. *Trainer,* 101 U. S. 51. While no one has the right to sell his own wares as the wares of another, every one has the right to make and sell any wares not protected by patents. Marks, symbols, or dress placed upon the wares might unlawfully misrepresent their source, but when left to speak for themselves alone there could be no wrongful misrepresentation. These principles are not much controverted by the orator's counsel, but it is claimed that as the orator's machines are somewhat known by this frame, and other shapes easily distinguishable from this might be equally useful, some of which in hexagonal or octagonal, instead of circular, shape are suggested, the defendant should use some of those. But those, doubtless, would have been infringements of the patents, and the style used is as much freed by the expiration of the patents as those are. All the effect which these frames have in representing machines to be those of the orator, appears to be due to the monopoly enjoyed under the patents; and to give the orator the benefit of the effect by calling the frame a trade-mark, would continue the monopoly indefinitely, when under the law it should cease.

It is obvious that the registration of the trade-mark in 1880 would not affect rights which the public already had acquired; it is not claimed that it should.

Motion granted.

See *Hostetter* v. *Fries, ante,* 620; *Burton* v. *Stratton,* 12 FED. REP. 696, and note, 704; *Shaw Stocking Co.* v. *Mack,* Id. 707, and note, 717.—[ED.