SINGER MANUF'G CO. *v.* JUNE MANUF'G CO.

(*Circuit Court, N. D. Illinois.* December 23, 1889.)

1. TRADE NAMES—"SINGER MACHINES"—USE AFTER EXPIRATION OF PATENT.

That the patentee, Singer, and his successors, have manufactured sewing-machines publicly known as "Singer Sewing-Machines," and the name "Singer" has come to identify the special kinds of machines made by them, does not, after the expiration of the patent, give them exclusive right to the use of the term "Singer," as applied to sewing-machines.

2. PATENTS FOR INVENTIONS—EXPIRATION—RIGHTS OF PATENTEE.

After the expiration of the patent, the public may manufacture machines having the same form of construction, and even ornamentation, used by the patentee.

3. TRADE-MARKS—INFRINGEMENT.

A trade-mark consisting of an oval plate attached to the machine, stamped in the center with a shuttle and two crossed needles, whose threads form an "S," and around the edge with the words "Singer Sewing-Machine Co.," and a wreath of leaves, is not, in the absence of a right to the plate itself as a trade-mark, infringed by a similar plate, with the words "Improved Singer" in the border, and the monogram "J. M. Co.," in the center.

In Equity. Bill for infringement of trade-mark.

*Offield & Towle* and *Lawrence Maxwell, Jr.*, for complainant.

*John G. Elliott,* for defendant.

BLODGETT, J. This is a bill in equity, charging defendant with an infringement of complainant's trade name and trade-mark, and seeking an injunction and accounting by reason of the alleged infringement. The material allegations of the bill are that in the year 1850 the firm of I. M. Singer & Co. commenced the manufacture of sewing-machines in the city of New York. That in 1863 said I. M. Singer & Co. transferred their business to the Singer Manufacturing Company, a corporation organized and existing under the laws of the state of New York, and in 1873 the Singer Manufacturing Company of the State of New York transferred its business, good-will, and trade-marks to the present complainant, the Singer Manufacturing Company of the State of New Jersey. That, from the commencement of said business of the firm of I. M. Singer & Co. up to the time of the filing of this bill, complainant and its predecessors have manufactured and sold sewing-machines of many different kinds and varieties, and have from the first marked their machines with the name "Singer," that being the name of the founder of said business, and have always called, advertised, and sold all of their said machines as "Singer Sewing-Machines;" have spent large sums of money in improving and perfecting said machines, and in advertising the same; and that the machines so manufactured by complainant and its predecessors have acquired a world-wide reputation for the excellence of their workmanship and their merit, and have been universally called and known by the name of "Singer Sewing-Machines." That the adoption and appropriation of said name was original with said I. M. Singer & Co.; and they and their successors, including complainant, have ever since used the same continuously and exclusively as a designation for the sewing-machines manufactured by them; and that said I. M.

Singer, the founder of said business, and the principal member of said firm, whose name was thus adopted as a designation for said sewing-machines, remained until the time of his death one of the principal owners of the business of said firm and stockholders in said incorporated companies. That one of the most popular of the machines made by complainant and its predecessors for many years past has been the style known as the "New Family Singer," which is especially adapted to family use, and of which very large numbers have been sold. That this style of complainant's machine has always had a certain peculiar form, shape, outline, and ornamentation, not essential to the utility of the machine, but possessing a peculiar and distinctive general appearance, which is familiar to the trade and the public, as characteristic of said "New Family Singer" sewing-machines; and that the same is also true of another of the complainant's popular machines, the style known as the "Medium Singer," which is adapted to heavier work than the "New Family Singer." It is also charged that for many years past complainant has also put upon its machines a trade-mark consisting of an oval brass plate, with the word "Singer" and the letter "S" stamped upon it, which plate, in the said style, known as the "New Family Singer" and "Medium Singer," has been uniformly affixed at the side nearest to the operator, on the arm of the machine, near its base. That defendant, the June Manufacturing Company, in violation of complainant's rights, has for some time past been engaged in manufacturing sewing-machines which it calls, advertises, and sells as "Singer Sewing-Machines," and as the "Improved Singer Sewing-Machines," and by other colorable imitations of and variations upon complainant's said trade name. And for the purpose of further availing itself of complainant's reputation and trade name, and of inducing the belief that the machines manufactured and sold by it are manufactured in fact by complainant, defendant makes said machine in the exact form and size, and with the same shape, outline, ornamentation, and general external appearance, of complainant's machines, and particularly of complainant's "New Family" and "Medium Singer" sewing-machines. That defendant, for the same purpose, also affixes to the machines manufactured and sold by it, and in precisely the same position on said machines, an oval brass plate of precisely the same size and general appearance as the plate used by complainant, on which defendant stamps the words "Improved Singer," and the letters "S. M. Co.," and the defendant, in imitation of another device used by complainant, also casts the word "Singer" and the letter "S," in large size, in the legs of the stands of the machines which it manufactures and sells; and the defendant advertises said machines manufactured and sold by it by means of cards and prints which are imitations of complainant's cards and prints, and representations of machines of its manufacture.

Defendant, by its answer, denies that it has used a colorable imitation of complainant's machine for the purpose of inducing the belief that machines made and sold by the defendant are manufactured by complainant, or that it makes and sells machines in the same shape, outline, ornamentation, and general external appearance as the complainant's ma-

chine, except in so far as it is advised it may lawfully do, and avers that where the sewing-machines made by defendant resemble, in size, shape, external appearance, or other particulars, the machines made by the complainant, it is because such shape, size, and external appearance are public property, and not in any manner the exclusive property of complainant. That, while defendant's machines bear an oval plate with the words "Improved Singer" thereon, defendant has the right to so mark its machines; and that said plate does not, in its general appearance, configuration, and design, imitate the trade-mark of the complainant; and that the monogram on the said oval plate is not an imitation of complainant's alleged trade-mark. Also, denies that it advertises its machines as made by the complainant, or seeks to produce the impression upon the public that the machines made by defendant are made by the complainant; and, while it admits that it uses the words "Improved Singer" and "June Singer" in making and advertising its machines, defendant insists that it has the right to use the word "Singer" as descriptive, or partly descriptive, of machines made by it, because the machines made by complainant and its predecessors acquired the name of "Singer Sewing-Machines," and became known to the public by the name of Singer Sewing-Machines, because they were for a long time manufactured by complainant and its predecessors under patents, from which patents said machines obtained the name of Singer machines; and that such patents have long since expired; and that since the expiration of said patents the defendant has the right to make machines in the form and external appearance of machines made by the complainant under its patents, and which became known to the public by the name of the inventor, Singer.

Voluminous proofs have been taken upon the issues made by the bill and answer, from which it appears that in 1850 Isaac M. Singer and Edward Clark formed a copartnership for the purpose of manufacturing sewing-machines under certain patents which had been granted to the said Singer and others, which had been acquired by said firm as assignees or licensees; and that the machines made by the said firm became at once publicly known as "Singer Sewing-Machines" or "Singers;" that said firm continued to manufacture sewing-machines under the said patent until some time in 1863, when the business of the firm was transferred to the Singer Manufacturing Company of New York, a corporation organized under the laws of the state of New York, and afterwards, in 1873, the business of said Singer Manufacturing Company of New York was transferred to the present complainant, a corporation organized and existing under the laws of the state of New Jersey; and that the principal patents under which said machines were manufactured remained in force until about 1877 and during all the time the property of the firm of I. M. Singer & Co., and the Singer Manufacturing Company of New York, and until after the said business passed to the present complainant, and the expiration of said patents, the sewing-machines made by the firm and its successors were publicly known as "Singer Sewing-Machines," and the name or word "Singer" became a term of description to identify the

special kinds of sewing-machines made by said I. M. Singer & Co., and their successors; that the machines introduced and made by said firm and its successors under said patents had certain characteristics and peculiarities, in which they differed from sewing-machines made by other manufacturers; and that the name "Singer" became identified with the description of machines made by said firm and its successors under the patents owned or used by them, so that when the word "Singer" was used in connection with a sewing-machine it was understood by the public to mean and refer to a sewing-machine embodying the characteristics, mode of operation, and form of construction of the machines made by said firm and its successors under the patents which they owned or controlled; that the complainant and its predecessors made several kinds and sizes of machines adapted to different kinds of work, and all known as "Singer Sewing-Machines." The proof also shows that in 1871 complainant's predecessor, the Singer Manufacturing Company of New York, devised a trade-mark, which it affixed to the arm of its machines, on the side nearest the operator, of an oval metal plate, in the center of which was the outline of a shuttle, two needles crossed, and the threads from the needles so placed as to imitate a capital letter "S," with the words "Singer Sewing-Machine Co.," and a vine or wreath of leaves forming the border around the outer edge of the plate, and the word "trade-mark" below the shuttle and needle and thread device. The proof also shows that defendant has made and sold sewing-machines having substantially the mechanical features and characteristics of the sewing-machines made by complainant and its predecessors under their patents, and in appearance and mode of operation like complainant's "New Family Singer" sewing-machines and complainant's "Medium Singer," which it has advertised as the "Improved Singer" and "June Singer," all of which were manufactured by the defendant, the June Manufacturing Company; that the machines made by the defendants also have on the arm, in front of the operator, an oval metal plate, with the words "Improved Singer" in the border, and the monogram, "J. M. Co.," in the center; and that for a short time after the defendant commenced business it sold a few machines, which came to it from its predecessor in business, with an oval metal plate on the arm, with a monogram consisting of the letters "S. M. Co." in the center, and the words, "Improved Singer, Chicago," around the border of the plate; and that the letters "S. M. Co." were an abbreviation of the words "Standard Sewing-Machine Co.;" and that while the defendant, in advertising its machines, has used the word "Singer," still there were always such words and symbols used with the word "Singer" as to indicate that its machines were not manufactured by the complainant, but were made by the defendant.

The contention of complainant is that it is entitled to the exclusive use of the word "Singer" as a trade name, and that the defendant has no right to use the word "Singer" in any way, or in any combination, as descriptive of the machines made by the defendant. The questions raised by this bill are by no means new ones. Substantially the same

questions were before this court in *Manufacturing Co.* v. *Larsen*, 8 Biss. 151, and were also raised and passed upon in *Brill* v. *Manufacturing Co.*, 41 Ohio St. 127; *Manufacturing Co.* v. *Stanage*, 6 Fed. Rep. 279; *Same* v. *Riley*, 11 Fed. Rep. 706; *Same* v. *Loog*, 44 Law T. (N. S.) 888; *Same* v. *Kimball*, 10 Scot. L. R. 173. In all those cases the present complainant sought to enjoin the use of the word "Singer" by the defendants as a designation for sewing-machines made or dealt in by them respectively; and the right thus asserted was denied in all those cases, except that reported in 10 Scot. L. R. In the *Larsen Case*, 8 Biss. 151, it was said by Judge DRUMMOND:

"I think there can be no doubt that the plaintiff cannot claim the exclusive right to manufacture the 'Singer Sewing-Machine.' All that it can claim is to make a machine of its own peculiar manufacture, with a device in the nature of a trade-mark. Otherwise, after a patent has expired which has established the nomenclature of a sewing-machine, as the Howe patent or the Wilson patent, the patentee might go on and have the benefit of the patent indefinitely. * * * These patents have all expired; and nothing can, therefore, be claimed under them. Other persons cannot be prevented from manufacturing a machine like the Singer sewing-machine, and which may be called, to distinguish it from other machines, 'Singer's Sewing-Machine.' If a sewing-machine has acquired a name which designates a mechanism or a peculiar construction, parts of which are protected by patents, other persons, after the expiration of the patents, have the right to construct the machine, and call it by that name, because that only expresses the kind and quality of the machine."

So, in *Brill* v. *Manufacturing Co.*, it is said:

"Descriptive as the name Singer is of machines of a really distinctive character in their construction and principle of operation, when the patents protecting them expired, the right to use that name accompanied the right to make and sell the machines. It would be a poor return for the exclusive privilege which the public gives for a long period to the patentee, if, after the expiration of his patent, he shall be allowed to virtually perpetuate his monopoly, in a measure, by preventing all others from using the name which will describe and make known the invention that has become dedicated to the public."

Much more might be quoted from the other cases which I have cited, asserting the same general principle; but, while it has been, since the expiration of the patents, the right of any one to make sewing-machines embodying the form of construction and mode of operation of the Singer patents, it does not follow that any person has the right to so mark or indicate upon machines of his manufacture any sign or lettering to the effect that it is the manufacture of the complainant. A paragraph from Judge DRUMMOND's opinion, above referred to, is pertinent upon this point:

"So that, while I hold that the defendant is not prevented from constructing a 'Singer Sewing-Machine,' still he cannot be permitted to do any act, the necessary effect of which will be to intimate, or to make any one believe, that the machine which he constructs and sells is manufactured by the plain-

tiff. Neither has he the right to use any device which may be properly considered a trade-mark, so as to induce the public to believe that his machine has been manufactured by the plaintiff."

The rule deducible from these adjudged cases seems clearly to be this: that, if the manufacturer of a patented machine adopts a peculiar style or form in which to embody the working mechanism covered by his patents, or any special mode of ornamentation to make the machine attractive and salable, such form of construction and ornamentation, although not strictly essential to the operation of the mechanical device covered by the patents, still becomes a part of the machine as presented to the world on the expiration of the patents. It goes to the public in the dress and with the features which have been given it by its manufacturer under the patents. It is presumable that an intelligent manufacturer, wishing to secure a large sale for a mechanical device of which he has a monopoly, especially in a machine of the kind under consideration, which has become a part of household furniture, used his best skill and taste as a constructor to make the machine convenient and attractive, so as to give the best possible embodiment of his patented mechanical devices; and, as I have already said, this dress, thus given to the machine, becomes a part of it, and the public, when they have the right to use the patent, have the right to use the dress in which the patentee clothed it. Hence any sewing-machine manufactured by another person, after the expiration of the patents, upon the principles covered by the Singer patents, may be a perfect imitation of the machines which the complainant or its predecessors manufactured under their patents. It does not lie in the mouth of the complainant to object to the close imitation or similarity which the defendant's machines may bear to those made by the complainant. It is the misfortune, perhaps, in a certain sense, of the complainant, if it continues to manufacture Singer sewing-machines of the style originated by it, that others may also manufacture machines which look, as well as operate, so nearly like those of complainant as that it may take a person of experience to tell the difference between them, aside from the name or trade-mark of the manufacturer thereon; but the fact that this right of others may embarrass the complainant's business is only a consequence following the right of the public to make and use, without tribute to the patentee, machines which have in their mechanical principles and forms of construction become public property. It would be a dangerous doctrine to concede that a patentee, who has invented a machine which has gone into extensive public use, can, after the patents have become public property, still prevent the public from having the benefit of the invention until they devise and adopt some new form of construction from that adopted by the manufacturers under the patents, and create a new reputation for their machine. I am, therefore, clear that the claim set up by complainant to the exclusive use of the word "Singer" as a trade name, and to the exclusive right to the mode of construction, external shape, appearance, and ornamentation adopted by the complainant while the patents were in force for its "New Family Singer" and "Medium Singer," is not.

well founded, and should not be so held, as a matter of law, upon the proofs in this case.

As to the alleged infringement of complainant's trade-mark, I can only say that defendant's oval plate, when inspected and examined, is not an imitation of the complainant's trade-mark. Complainant has not, according to the showing of its bill and the proofs, acquired any special right to the oval brass plate affixed upon the side of the sewing-machine nearest the operator; but that oval brass plate must bear certain symbols and letterings which make the complainant's trade-mark, and which I do not find in the oval brass plate used by the defendant. The claim is that complainant originated this trade-mark, and began the use of it, early in 1871, which, according to the proof, was while many of the patents owned, by complainant and its predecessors remainded in force; and, while I do not deem it necessary to pass upon the question here, I have serious doubts whether a manufacturer making a machine under a patent or patents can, while so doing, apply a trade-mark which shall continue his exclusive property after the expiration of the patents which gave character to the mechanism; but I feel very sure that if, in so applying a trade-mark, the plate or escutcheon on which it is impressed or engraved became a part of the ornamentation of the machine, the plate itself may be used by others, as an ornament of the machine, after the expiration of the patent, even if the later manufacturer has no right to use the special symbols of the trade-mark. I do not find, from the proof, that the defendant has been guilty of infringing the complainant's trade-mark. The bill is therefore dismissed, for want of equity, at complainant's costs.