(84 Misc. Rep. 478)

### C. KURTZMANN & CO. v. KURTZMANN.

(Supreme Court, Equity Term, Erie County. March, 1914.)

1. TRADE-MARKS AND TRADE-NAMES (§ 73*)—INJUNCTION—RIGHT OF ACTION.
   While a person cannot be enjoined from using his own name in business, the manner of such use may be regulated by injunction.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNFAIR COMPETITION—USE OF NAME.
   While every person may honestly use his own name in his own business, though he may thereby incidentally injure the business of another having the same name, he cannot so designate an article of his own production by his own name as to cause it to be mistaken for another's goods which are already in market, or so use his name as to lead the public to believe that his business is that of another.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 73*)—USE OF NAME—INJUNCTION—RIGHT OF ACTION.
   Where, in an action to restrain defendant from offering for sale pianos bearing the name of defendant "Chas. F. Kurtzmann" and manufactured for him by others, it appears that plaintiff has succeeded by proper transfers to all the property, assets, and good will, including the trade-name or "Kurtzmann," acquired from the executor of the Kurtzmann estate by a partnership, upon retiring from which defendant, a son of said Kurtzmann, executed a binding agreement transferring all his interest in the property, name, and accounts of such firm, and agreeing that he would not injure the business transferred, the injunction sought will be granted.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 86*)—INJUNCTION—LACHES.
   Mere delay in bringing suit does not constitute a defense in a suit to enjoin unfair competition in the use of a name in such way as to lead the public to believe that defendant's goods are those of plaintiff.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 95; Dec. Dig. § 86.*]

Injunction by C. Kurtzmann & Co. against Frederick C. Kurtzmann, known also as Charles F. Kurtzmann. Judgment for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
147 N.Y.S.—43

Rogers, Locke & Babcock, of Buffalo (Charles B. Sears and Ansley W. Sawyer, both of Buffalo, of counsel), for plaintiff.

Shire & Jellinek, of Buffalo (Vernon Cole, of Buffalo, of counsel), for defendant.

BISSELL, J. This action has been brought by the plaintiff to permanently enjoin and restrain the defendant, among other things, from manufacturing, selling, offering for sale, or placing upon the market pianos, by or under the name "Kurtzmann," or any name or designation of which the word "Kurtzmann" forms a part.

In 1848 Christian Kurtzmann began the manufacture and sale of pianos in Buffalo, N. Y., and the "Kurtzmann" piano gained a wide reputation for excellence. The trade-name "Kurtzmann," as applied to the manufacture and sale of pianos, has become a trade-name of great value.

The plaintiff is a corporation which was organized in 1901 and has succeeded by proper and legal transfers to all of the property, assets, and good will, including the trade-name of "Kurtzmann" acquired from the executor of Christian Kurtzmann by the copartnership first existing under the firm name of "C. Kurtzmann" and then of "C. Kurtzmann & Co." The trade-name "Kurtzmann" has been built up, not only through the skill and efforts of the original manufacturer, but also through the skill and efforts of his successors in interest, and the plaintiff has expended large sums of money and devoted its efforts to advertising and further extending its business in the manufacture and sale of the "Kurtzmann" pianos.

The pianos and player pianos manufactured by the plaintiff and its predecessors are well and favorably known to the trade, and to the general public, as the "Kurtzmann" piano. They are conspicuously marked upon the fallboard with the name "C. Kurtzmann & Co.," and the same name is cast in the iron plate inside the outer case of the piano. The player pianos are similarly marked.

The defendant is a son of Christian Kurtzmann and learned the piano trade through association with his father, and, after his father's death, as a member for a brief time of the firm of "C. Kurtzmann" from which he retired in 1887, executing an agreement whereby he sold and transferred, for a valuable consideration, all of his interest in "the stock, property, name, accounts, and all other property of said firm of whatsoever kind, name, or nature," further agreeing that he would not "hinder, molest, or injure the said parties of the second part in the carrying on of said business, or in any way interfere with them." Since that time he has had no connection with the business of that firm or that of any of its successors. He has not been engaged in the manufacture of pianos but has been a dealer in pianos manufactured by others. The pianos sold by him were until four or five years ago marked "Manufactured by ——— for Chas. F. Kurtzmann." Some of them, in the early days when the sales were few, bore the mark "C. F. Kurtzmann" or "Chas. F. Kurtzmann," without stating the name of the actual manufacturer. Within the last few years he has offered for sale pianos bearing the name "Chas. F. Kurtzmann" which have been

manufactured for him by Lindeman & Co. of New York City. These pianos are conspicuously marked upon the fallboard with the name "Chas. F. Kurtzmann," and this name is also cast in the iron plate inside the outer case. The player pianos offered for sale by him are similarly marked. More recently he has undertaken an active campaign throughout the country for the sale of pianos bearing his name, and has advertised his business under the style of "The Original Kurtzmann." On the letter head and envelopes used in his business is printed:

"The Original<br>
"Chas. F. Kurtzmann Pianos and Player-Pianos.<br>
"630 Main Street, Buffalo, N. Y."

In the year 1913, he issued and distributed a catalogue containing pictures of pianos bearing upon the fallboard the name "Chas. F. Kurtzmann, Buffalo, N. Y.," and containing misleading statements as follows:

"By this catalogue an attempt will be made to briefly describe and illustrate the pianos and player pianos manufactured by and under the personal supervision of Chas. F. Kurtzmann. These instruments are produced in a factory which is one of the best equipped in America.  *  *  *

"It is the purpose of the maker to at all times give the public the very best possible value."

The fact was not disputed on the trial that the defendant has not manufactured a single piano since he retired from the firm of "C. Kurtzmann" in 1887, and by his own testimony he concedes that the pianos sold by him and marked with his name were manufactured by Lindeman & Co. of New York. The representations made in the defendant's catalogue must therefore be characterized as fraudulent representations intended to deceive the public.

Proof was made on the trial that purchases of pianos have been made of the defendant by persons who were misled, and believed that they were purchasing the "Kurtzmann" piano manufactured by the plaintiff.

Plaintiff claims that the defendant has also been guilty of dishonesty in changing his name from Frederick C. to Charles F. Kurtzmann. It appears that, while the defendant was christened Frederick C. Kurtzmann, he has in the past also used the name Charles F. Kurtzmann and has been known to his friends and acquaintances as Charles and Charlie, so that I fail to see any dishonest purpose in the present use of that name in his piano business. That question, moreover, I regard as immaterial. The important question involved in this action relates to the use of the name "Kurtzmann," as applied to the manufacture and sale of pianos, without reference to the prefix. It is a matter of slight importance what initial or Christian name may have been used with it.

The defendant contends that the good will and trade-name connected with the business of Christian Kurtzmann did not pass by the bill of sale from his executor to the copartnership organized under the firm name of C. Kurtzmann in 1886, of which copartnership the defendant was a member until 1887. While, under the decisions of the courts, the trade-name would pass by bill of sale of all of the prop-

erty without specific mention, it is expressly stated in the terms of the bill of sale made by the executor of Christian Kurtzmann that the trade-name, as well as the good will, were transferred. These items of property were of greater value than the other items sold by the executor at that time; and the name "Kurtzmann," with its added value since that time, is the item of property now of greatest value to the plaintiff, whose ownership has been proved in this action by a clear chain of title.

The defendant urges that in the conduct of his piano business, as above set forth, he is simply exercising his individual right to use his own family name.

[1-3] The doctrine that every person has the right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name, is well settled. But while the right of no one can be denied to employ his name in connection with his business, or with articles of his own production, so as to show the business or product to be his, yet he will not be allowed to designate his article by his own name in such a way as to cause it to be mistaken for the manufacture or goods of another already in the market, or to use his name in such a way as to deceive the public into believing that his business is that of another. Meyer v. Dr. B. L. Bull Vegetable Medicine Co., 58 Fed. 884, 7 C. C. A. 558.

The authorities are numerous and uniform in confirming and following the rule that an individual may be restrained from using his own name where such name constitutes a trade-name, and has passed under a sale of good will, and the name has acquired a value as a description or designation of a manufactured article, and the use of it by another is calculated to injure the established concern, and to mislead or deceive the public. Chas. S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Hier v. Abrahams, 82 N. Y. 519, 37 Am. Rep. 589; Colman v. Crump, 70 N. Y. 573; Devlin v. Devlin, 69 N. Y. 212, 25 Am. Rep. 173; Congress & Empire Spring Co. v. High Rock Spring Co., 45 N. Y. 291, 6 Am. Rep. 82; Ludwig & Co. v. Claviola Co., 144 App. Div. 388, 129 N. Y. Supp. 310; De Long v. De Long Hook & Eye Co., 10 Misc. Rep. 577, 32 N. Y. Supp. 203; Taensticksfabriks Akticbolagat Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904.

The general rule, derived from the decisions of state, federal, and English jurisdictions, is stated in 38 Cyc. 809, 810, as follows:

"The right to use a personal name in business, even one's own, is subject to the general rules in regard to unfair competition. A man must use his own name honestly and not as a means of pirating upon the good will and reputation of a rival by passing off his goods or business as the goods or business of his rival who gave the name its reputation and value. No one will be permitted to use even his own name with the fraudulent intention of appropriating the good will of a business established and built up by another person of the same name. While the use of one's own name cannot be absolutely enjoined, nevertheless the manner of using it may be regulated by injunction."

In a recent case, very similar to the case at bar (Chickering v. Chickering & Sons, decided February 24, 1903, by Judge Jenkins in the

United States Circuit Court of Appeals for the Northern District of Illinois, 120 Fed. 69, 56 C. C. A. 475), it was held that:

"While every man has the right to use his own name honestly and fairly in his own business, and, so using it, is not responsible for resulting confusion with the goods of another of the same name, on the other hand he must so use his name as not to unnecessarily injure another, nor to produce greater confusion than would naturally result from the mere similarity or identity of name. He may not dress his goods in a manner calculated to enable them to be palmed off on purchasers as those of another."

To the same effect is the decision in the case of American Piano Co. v. Knabe Bros. Co., 214 Fed. ——, decided, in the United States Circuit Court in Ohio, October, 1911. In the case of Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616, the United States Supreme Court by Mr. Justice Holmes said:

"The original company, from 1867 to 1892, was attaching to Hall's safes the reputation that made the name famous and desired. Whoever achieved it did so through the medium of the company. The good will thus gained belonged to the company, and was sold by it, with all its rights, when it sold out. See Le Page Co. v. Russia Cement Co., 51 Fed. 941, 943 [2 C. C. A. 555, 17 L. R. A. 354]. So that the question is narrowed to what its rights would have been at the present day if it had kept on. The advantage which it would have had, and to which the petitioner has succeeded, is that of having been first and alone for so long in the field. Some of the Halls might have left it and set up for themselves. They might have competed with it; they might have called attention to the fact that they were the sons of the man who started the business; they might have claimed their due share, if any, of the merit in making Hall's safes what they were. White v. Trowbridge, 216 Pa. 11, 18, 22 [64 Atl. 862]. But they would have been at the disadvantage that some names and phrases, otherwise truthful and natural to use, would convey to the public the notion that they were continuing the business done by the company, or that they were in some privity with the established manufacture of safes which the public already knew and liked. To convey that notion would be a fraud, and would have to be stopped. Therefore such names and phrases could be used only if so explained that they would not deceive."

In Walter Baker & Co. v. Baker (C. C.) 87 Fed. 209, a case arising in New York state, the court said:

"It is said that he has not been shown to have deceived any one, or to have instigated a deception, but that he has testified that he uniformly asks his customers if they want his goods as distinguished from those of the complainant. The reply to these suggestions and to this testimony is that he intentionally uses his name as a manufacturer of chocolate in the same way that the complainant and its predecessors have long been accustomed to use their name as manufacturers of the same article, and he has thus intentionally presented his article to the public under a form of words which would naturally lead the purchaser to believe that it was the complainant's manufacture. The well-known short name by which the public styles the article of the complainant is 'Baker's Chocolate,' and thus the public regards what is presented under that name as the complainant's article, and associates the name with a particular factory of long existence and permanence."

Among the other federal cases where the question involved in the case at bar was discussed, and the rule applicable to the case applied, were the following: Bates Mfg. Co. v. Bates Numbering Machine Co. (C. C.) 172 Fed. 892; Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; Le Page Co. v. Russia Cement Co., 51 Fed. 941, 2 C. C. A. 555, 17 L. R. A. 354; Walter Baker & Co. v.

Slack, 130 Fed. 514, 65 C. C. A. 138; Stuart v. F. G. Stewart Co., 91 Fed. 243, 33 C. C. A. 480; Collinsplatt v. Finlayson (C. C.) 88 Fed. 693.

[4] The learned counsel for the defendant urges that the defendant has been engaged in business in the same way as at present since 1887, without any complaint or remonstrance on the part of the plaintiff, and that for that reason the plaintiff has now lost by its laches the right to the relief demanded in the complaint. This position is not tenable. It appears by defendant's testimony that during most of the time since 1887 he has sold pianos which were marked either "Manufactured by ———— [whether the maker was Lindeman, Baumeister, or some other maker] for Chas. F. Kurtzmann," or manufactured by Lindeman "expressly for Chas. F. Kurtzmann." Some of them bore the defendant's name, without indicating the maker, in the early years when his sales were small. It also appears that in 1908 the plaintiff acquired all of the capital stock of the "C. F. Kurtzmann Company," a corporation organized by defendant to take over his retail business, and that thereafter defendant was for a time in the employ of plaintiff, and that it is only since that time, and comparatively recently, that the defendant has actively undertaken to sell pianos marked with his own name under the representation that they are his own manufacture. I do not think, therefore, that the plaintiff has lost any of his rights by delay in bringing suit, under the facts found and the law applicable to this case. The rule of law disposing of this question is well stated in 38 Cyc. 881, as follows:

"In suits for unfair competition or infringement it is well settled that mere laches in the sense of delay to bring suit does not constitute a defense. Such laches may, under some circumstances, bar an accounting for past profits, but under no circumstances will it bar an injunction against a further continuance of the wrong."

This principle is sustained by the courts of all jurisdictions; the leading case upon the point being Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526.

Let a decree be entered by the plaintiff for the relief demanded in the complaint, with costs. The form of the decree, as to the injunctive relief granted, will be settled by the court on five days' notice to defendant's attorney.

Judgment accordingly.