AMERICAN CHAIN COMPANY, INC., Plaintiff, *v.* THE CARR CHAIN WORKS, INC., Defendant.

Supreme Court, New York Coun y, September 16, 1931.

*Frederick S. Duncan, Gilbert H. Montague* and *Frederick H. Koschwitz* [*Frederick S. Duncan* of counsel], for the plaintiff.

*Giffort, Scull & Burgess* [*George F. Scull* and *Francis H. Warland* of counsel], for the defendant.

COLLINS, J. The plaintiff charges the defendant with unfair competition in the sale of automobile tire chains. The claim is that, for the past three years, the defendant has simulated that color combination employed by the plaintiff for twenty-three years which identifies and distinguishes the chains as those of the plaintiff. By such emulation, the plaintiff says, the defendant is infringing upon, and reaping advantage of, the plaintiff's good will and investment.

There is little dispute regarding the salient facts. Consequently, the ultimate issue is free from complexity.

Concededly, the color combination adopted by the plaintiff, and for which it has created a reputation, is being employed by the defendant. And although there is some evidence concerning the utilitarian or functional properties inherent in the substances employed to produce the color scheme or finish, the analysis of all the evidence reveals that the *attractive appearance*, and not any functional or utilitarian aspects of the style, motivated its appropriation by both plaintiff and defendant.

The plaintiff maintains that the peculiar dress was selected by it " for the express purpose of giving the Weed chains a distinctive and attractive appearance entirely different from the tire chains of its many competitors," and the defendant acknowledges that, by its appropriation of the identical style, it encountered less " sales resistance " for its own product. Thus, the issue which this case presents is whether this confessed imitation constitutes unfair competition.

The plaintiff's predecessor, the Pioneer Weed Chain Tire Grip

Company, commenced to manufacture and sell automobile anti-skid chains in 1903, under the trade name Weed. The chains were covered by two major patents which expired in 1920 and 1921 respectively, and concerning which there was litigation which resulted favorably to them. The Weed chains, anterior to 1908, were finished with dark brown cross chains, produced by copper plating. It was in 1908 that, at increased cost, the plaintiff, solely to escape the repeated imitation of appearance, and to accord its chains a distinctive appearance, adopted the color combination here involved — bright yellow hardened cross chains, produced by brass plating, and gray side chains, achieved by galvanizing. The name " Weed " was impressed or indented on the hooks of the cross chains. The plaintiff placed these chains in brown bags with the name " Weed " printed thereon in black lettering. In addition to the Weed chains, the plaintiff manufactures and sells an inferior grade of chains designated " Rid-O-Skid," the cross chains of which are not hardened, and no plating is employed thereon, or on the side chains.

The gray-bright yellow combination has been extensively advertised through various mediums at a cost, from 1916 to the date of trial, of upwards of $4,800,000. Much of this advertising is in color. Almost invariably, the style of dress is conspicuously exposed and stressed. During that period approximately 20,000,000 pair of Weed chains, with the gray-bright yellow combination, have been sold, at a selling value to the plaintiff of $64,000,000. And, likewise during the same period, 325,000,000 Weed cross chains, finished in bright yellow, were sold, separate and apart from the side chains, as replacements. The plaintiff's chains are recognized by the buying public as of high standard of quality, workmanship and durability.

For approximately twelve years the plaintiff's style of finish was substantially free from imitation. It had and has many competitors, but most of them refrained and refrain from simulating plaintiff's color scheme.

In 1928 the defendant added tire chains to its long-existing chain business, and, to minimize sales resistance, likewise adopted the gray side-bright yellow cross assemblage. Its side chains are plated with cadmium, and its cross chains, like the plaintiff's, are plated with brass. Furthermore, these chains are put in brown bags, with some of the same type of black lettering appearing on the plaintiff's bags, except that on the defendant's bags is imprinted the name " Carr " in purple lettering, together with the defendant's trade-mark — the world encircled by a chain, which is somewhat

similar to the trade-mark employed by the plaintiff. Near the bottom of the bag, printed in black, are the words: " Manufactured by Carr Chain Works, Inc., Troy, New York, U. S. A." In defendant's advertisements the " lustrous brass finish " of its product is emphasized. Other imitations, such as similarity in price lists and list prices, are complained of. The net result of this composite simulation, the plaintiff charges, is to palm off the defendant's goods for those of the plaintiff.

No actual deception is shown or claimed, but the plaintiff asserts that, chiefly due to greater discounts offered by the defendant, it has felt and suffered from the defendant's competition in the New York territory.

Acknowledging the simulation in color coalescence, the defendant, nevertheless, earnestly challenges the plaintiff's complaint of unfair competition, and advances the following six major defenses:

*First.* That to sustain the plaintiff's claim would be granting it a monopoly of " the most economical, serviceable and efficient form in which the devices themselves may be embodied and offered to the trade;" that the color scheme was not employed by the defendant arbitrarily, but results from the use of materials which have a useful function in connection with the article itself, and contributes to its " utility, convenience or attraction."

*Second.* That the plaintiff should not be permitted to monopolize two of the primary colors, either singly or in combination, when that would lead to the possibility of all the other available colors being monopolized by a few traders, thus shutting out further competition.

*Third.* That, when plaintiff's patents expired, the inventions thereof passed into the public domain, and, with them, all of the characteristics by which the public had been educated to identify the patented inventions.

*Fourth.* That the plaintiff's gray and brass finish is at most a *grade*-mark, as distinguished from a *trade*-mark, and is, therefore, open to any one to use to indicate a first quality chain.

*Fifth.* That the plaintiff has failed to show that the specific finish and the brown bag are the features by which purchasers distinguish plaintiff's goods from those of its competitors, and,

*Sixth.* That the plaintiff's delay in enforcing its alleged rights precludes the maintenance of this action.

The law of unfair competition is of comparatively recent origin. It is the necessary creation of intensive business rivalry which often incites unfair methods. Whilst the books contain a multitude of cases bearing on this branch of equity, the principles governing them are simple, as, indeed, are the fundamental rules of honesty

and fair dealing. The essence of these principles is that competition between business rivals must be fairly and honestly conducted. " The survival of the fittest " in trade and commerce must result from contests legitimately launched and ethically directed.

Of course, the law does not undertake to regulate every aspect of business. Nor does it interfere in every case of commercial immorality. Too much interference would be as baneful as an inflexible policy of absolute non-interference. Necessarily, there must be limitations and guiding rules, and, necessarily, each case must depend for sustenance upon its own larder.

An early case (*Coats* v. *Merrick Thread Co.*, 149 U. S. 562, 566) makes this pertinent observation, " irrespective of the technical question of trade-mark, the defendants have no right to dress their goods up in such manner as to deceive an intending purchaser, and induce him to believe he is buying those of the plaintiffs. Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their enclosing packages, in the extent of their advertising, and in the employment of agents, but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals."

Nims, in his standard treatise on " Unfair Competition " (3d ed. p. 25), aptly distinguishes the rule underlying unfair competition cases from those governing trade-mark cases, thus: " This action of unfair competition is the embodiment in law of the rule of the play-ground — ' Play fair! ' For generations the law has enforced justice. In this action the basis is fairness — quite a different ethical principal. Many decisions have been approved as just, which were most unfair. The maxim *caveat emptor* is founded on justice; the more modern rule that compels the use of truth in selling goods is founded on fairness. It conflicts with the rule of *caveat emptor*."

With these general observations as a premise the six defenses will be treated seriatim:

1. The proofs are not convincing that the defendant adopted the brass plating solely because of any utilitarian function. It may be that surface rusting is thereby prevented or lessened, but the evidence shows that the same result can be achieved by other treatments or kinds of finish. Again, since brass is a union of zinc and copper, the finish can be varied with an adjustment of the percentage of zinc, and in accordance with the thickness of the copper deposit. The *natural* color of the material used in the manufacture of the chains is a bright steel color. As observed,

the galvanizing process is used to effect the gray color, and the plated process to achieve the bright yellow.

When put to use the cross chains soon lose their brightness.

The luster is for appearance sake, utilized to arrest the eye of the buying public. The finish is not functional. Since the object of the chains is to avoid skidding, the brightness of the finish can make no contribution in that direction. The luster is primarily for display purposes. The color bears no relation to utility. It is the imitation of color combination, and not the utilization of the particular properties which produce the color combination, which constitutes the unfair competition.

Even the imitation of functional features has been restrained where the circumstances attending the duplication warranted such a course, and where the imitator's style could, without substantial cost or damage, be so rearranged or altered as to distinguish it from the imitated. (*McGill Mfg. Co.* v. *Leviton*, 43 F. [2d] 607; affd. without opinion, 44 id. 1016; *Rushmore* v. *Manhattan Screw & Stamping Works*, 163 Fed. 939; *Anderson Co.* v. *Welworth, etc., Corp.*, 46 F. [2d] 696; *Wesson* v. *Galef*, 286 Fed. 621.)

Since I am persuaded that the defendant, in reproducing plaintiff's color combination, was motivated by a design to profit by the plaintiff's reputation, investment ·and advertising, rather than by any utilitarian or functional considerations, I am disinclined to sustain the defendant's first contention.

2. Nor am I impressed with the defense that to allow the plaintiff to prevail would be awarding it a monopoly of natural colors.

In a sense and degree, every holder of a patent or trade-mark possesses a monopoly respecting the device or trade-mark; otherwise, little protection would be afforded. Legal protection is one of the rewards of originality, extensive advertising, long usage, and investment. The same road is open to the defendant; but, in traversing it, it must not encroach upon the rights of others.

That a distinctive, identifying color collocation may be so extensively used and advertised as to be entitled to protection against imitators, is now settled law. (*Buffalo Yellow Cab Co.* v. *Baureis*, 132 Misc. 654; *Helmet Co.* v. *Wrigley*, 245 Fed. 824; *Walker* v. *Grubman*, 222 id. 478; *Coca Cola* v. *Gay-Ola*, 200 id. 720; *T. A. Vulcan* v. *Meyers*, 139 N. Y. 364; *Yale & Towne Mfg. Co.* v. *Alder*, 154 Fed. 37; *Buck's Stove & Range Co.* v. *Kiechle*, 76 id. 758; *Champion Spark Plug* v. *Mosler*, 233 id. 112; *Anderson Co.* v. *Welworth, etc., Corp., supra.*)

The evidence satisfies me that there are a number and variety of color combinations available to the defendant, and that the simulation here was avoidable. What was said in *Collins Co.* v.

*Paist Co.* (14 F. [2d] 614, 615, 616) is apposite here: " Defendant has * * * adopted a package which in coloring and arrangement of colors is likely to deceive the eye of the unwary. The purchaser identifies the package by its general appearance, and not by meticulous inspection.

" The law has a threefold object in unfair competition cases: First, to protect the honest trader in business which fairly belongs to him; second, to punish the dishonest trader, who is taking his competitior's business away by unfair means; and, third, to protect the public from deception. It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks, and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to the dress of those of his business rival that the public may fail to distinguish between them. The law is not made for the protection of experts, but for the public — that vast multitude, which includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearance and general impressions. *Florence Manufacturing Co.* v. *J. C. Dowd & Co.*, 178 F. 73, 101 C. C. A. 565.

" The one who is selling a product similar to that of another must sell it as his own production. To paraphrase the language of JESSEL, Master of the Rolls, in re Worthington & Company's Trade-Mark, L. Rep. 14 Ch. D. 8, if he is honestly desirous of distinguishing his own goods from the goods of others, he will choose a dressing for his goods not resembling that of some successful competitor, because his anxiety and desire must be that the public should by no possibility mistake his goods for the goods of anybody else. While it is a fact that the defendant wrapped its units in yellow paper with red printing thereon prior to the plaintiff so doing, and, therefore, simulation of the plaintiff's article cannot be predicated on that alone, yet that point of similarity, when added to the similarity in package, coloring, and design, does not justify an encroachment upon the plaintiff's good will by conveying a false impression upon the mind of the ordinary purchaser."

3. No validity attaches to the defense that the expiration of plaintiff's patents authorized the defendant to emulate the plaintiff's color combination. Were this contention pursued to its logical end the holder of an expired patent would be wholly unprotected as to a particular style of dress known to the public separate and distinct from the patented device. True, it has been held that where a name is so connected and associated with the patented device or

product that the two (name and product) are indistinguishable and inseparable, and the patented device or article is not designated by any other name, then the expiration of the patent necessarily carries the name with it. (*Singer Mfg. Co.* v. *June Mfg. Co.*, 41 Fed. 208; affd., 163 U. S. 169; *Eagle Pencil Co.* v. *Baehr*, 118 Misc. 571.) *Wilcox & Gibbs S. M. Co.* v. *The Gibbens Frame* (17 Fed. 623), urged by the defendant, dealt with a *form* covered by a patent, and not a style of dress apart from the form. The concern here is not with a functional mechanical feature inherent in a formerly patented device, but with the *appearance* of an article by which it is recognized and known as that of the plaintiff. Nims (*supra*), page 393, section 139, states the prevailing rule thus: " Owners of a patented article have an absolute monopoly of the right to make and sell that article during the life of the patent, and in this period no one may copy it. The absolute property of the patentee in it gives him the right to demand its protection. But when the patent expires the law of unfair competition steps in, and forbids the marketing of the goods made by others than the patentee, in any manner which will pass off their article as that of those who made it under the patent.  *  *  *

" While upon the expiration of a patent, the name by which the article has come to be known is open to general use, this cannot be claimed as to the form of dress, such as a wrapper of peculiar design by which the article has been known to the public. These features have nothing to do with the patent rights, and are property of the patentee." (*Nathan Mfg. Co.* v. *Edna, etc., Co.*, 130 App. Div. 512; *Westcott, etc., Co.* v. *Oneida, etc., Co.*, 199 N. Y. 247; *President Suspender Co.* v. *MacWilliam*, 238 Fed. 159; *Searchlight Gas Co.* v. *Prest-O-Lite Co.*, 215 id. 692; *Centaur Co.* v. *Killenberger*, 87 id. 725; *Bayer* v. *United Drug Co.*, 272 id. 505.)

4. Even if plaintiff's gray and bright yellow finish were a *grademark*, instead of a *trade-mark*, it would be entitled to protection. (*Dixie* v. *Stearns*, 185 Fed. 431; *Capewell Horse Nail Co.* v. *Mooney*, 167 id. 575; *Armour* v. *Louisville Prov. Co.*, 283 id. 42; *Gorham Mfg. Co.* v. *Weintraub*, 196 id. 957.) Nims (*supra*), page 514, section 194, gives the rule as follows: " There may be different trade-marks used on different grades of the same product, provided they are so used as distinctly to indicate origin as well as grade. It does not vitiate a trade-mark, to show that it indicates grade or quality in addition to origin."

5. The proofs satisfy me that the style of dress of Weed chains is identified in the public mind as the chains of the plaintiff. " A presumption that articles are identified by their appearance, dress or trade-marks may arise from the long use of such dress or

trade-marks." (Nims, p. 875, § 346.) Here, we have more than presumption; there is direct proof. Wheeler testified: " The public associates Weed chains, and the color scheme and quality, as the prevailing or predominating chain in the field." (S. M. 21.) Further, Ebling testified: The public " is educated to " the " brass plated cross chains," and " look for it, and demand it more or less," " due to advertising for years and years." (S. M. 83.)

6. The defense of laches is not sustained. Even if others than the defendant trespassed upon the plaintiff's rights, that would not exculpate the defendant. That others committed a like wrong, with impunity, is no answer. " Mere delay or acquiescence cannot * * * defeat the right itself." (*Menendez* v. *Holt*, 128 U. S. 514, 523.) (See, also, *Luxor Cab Mfg. Corp.* v. *Leading Cab Co., Inc.*, 125 Misc. 764; affd., 215 App. Div. 798; *Selig Polyscope Co.* v. *Unicorn Film Service Corp.*, 163 N. Y. Supp. 62; *Kurtzmann & Co.* v. *Kurtzmann*, 84 Misc. 478; *Saxlehner* v. *Eisner & Mendelson Company*, 179 U. S. 19; *Ward Baking Co.* v. *Potter-Wrightington, Inc.*, 298 Fed. 398; *Actiengesellschaft Vereinigte Ultramarin-Fabriken* v. *Amberg*, 109 id. 151.) No abandonment is shown.

The defenses being rejected, several other comments will be noted:

(a) The fact that the respective names appear on the respective bags, and that the name Weed is on the hooks of the cross chains, is not sufficient to defeat the plaintiff's right to injunctive relief. The general appearance of the article as noted by the ordinary purchaser is the test. (*Warner Co.* v. *Lilly Co.*, 265 U. S. 526; *Enterprise Mfg. Co.* v. *Landers, Frary & Clark*, 131 Fed. 240; *Rushmore* v. *Manhattan, supra; Reid, Murdock & Co.* v. *Coffee Co.*, 48 F. [2d] 817; *Frischer* v. *Bakelite*, 39 id. 247.) Most frequently the chains are so displayed by the retailer that only the color of the bag, and not the lettering thereon, is discernible to the casual customer.

(b) Intent to deceive will be presumed where the resemblance is patent and the probability of confusion obvious. (*T. A. Vulcan* v. *Myers, supra; Dutton & Co.* v. *Cupples*, 117 App. Div. 172; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537.)

(c) Actual deception or confusion, or loss of business, need not be directly shown. Whether the imitation is calculated to deceive or confuse, is the inquiry. (*Gotham Silk Hosiery Co., Inc.*, v. *Reingold*, 223 App. Div. 260; *Dutton & Co.* v. *Cupples, supra.*)

After reviewing and weighing all of the facts and the governing law, I am constrained to the conclusion that the defendant should and can change the color combination of its chains so as to prevent their confusion with those of the plaintiff.

As to the most feasible and economical method of effecting the transformation, I shall entertain the suggestions of counsel for

both plaintiff and defendant. to be presented by memorandum by September 28, 1931.

Under the circumstances here no accounting will be decreed. No costs.

The court's thanks are extended to both counsel who have presented and briefed their respective points with skill and thoroughness. Submission of findings and judgment deferred until further notice.