## COCA COLA CO. v. GAY-OLA CO.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1912.)

No. 2,235.

1. CORPORATIONS ( 517*)—EQUITY (§ 339*)—ANSWER AS EVIDENCE—CORPORATION DEFENDANT.

A corporation cannot answer under oath in an equity suit, and even if its answer, when verified by an officer, is evidence under the equity rule, it is not available to prove an affirmative defense.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2047–2051; Dec. Dig. § 517;* Equity, Cent. Dig. §§ 685–696, 703–705, 710, 714; Dec. Dig. § 339.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 75*)—UNFAIR COMPETITION—GROUNDS FOR EQUITABLE RELIEF.

In a suit for unfair competition, it is not necessary to show that the immediate purchasers were deceived as to the origin of the goods; but even if they thoroughly understood that they were buying the counterfeit, and not the genuine, the manufacturer of the counterfeit will be enjoined from selling it to dealers with the purpose and expectation that it shall be used by the dealers to deceive the consumer.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 70*)—"UNFAIR COMPETITION"—INTENT.

The imitation by one manufacturer of the goods of another in name, appearance, and marking and color of packages, even if such similarities singly would not be unlawful, if accompanied by good faith, may constitute "unfair competition," which will be enjoined, where there is an actual purpose to deceive and defraud purchasers.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig § 81; Dec. Dig. § 70.*

For other definitions, see Words and Phrases, vol. 8, p. 7174.]

4. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—IMITATION IN PACKAGES AND COLOR OF PRODUCT.

Defendant manufactured a syrup for use in soda fountains, etc., and colored it to exactly resemble complainant's, which was earlier in the market, extensively advertised, and well known. The coloring matter was nonfunctional, being added to the compound solely for coloring purposes and in the quantity necessary to give it the color of complainant's. Defendant also colored its barrels and kegs red, which was the distinctive color used by complainant, and placed no marks thereon to indicate the place of manufacture. It also sent circulars to owners of soda fountains, calling attention to the cheapness of its product, and advising them that consumers could not tell it from complainant's. Held that, in view of its evident purpose to deceive consumers, all such modes of imitation should be enjoined, unless means were provided to prevent such deception.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 91*)—ACTION FOR UNFAIR COMPETITION —PARTIES.

A manufacturer, whose business is injured by unfair competition by the maker of a similar product, has a direct and independent right of action to enjoin such competition; and the fact that it supplies a part of its product to consumers in the territory where defendant does business only through a second company, which buys and resells it, and

which is also injured by the acts of defendant, does not make such second company a necessary party to the suit.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 101; Dec. Dig. § 91.*]

**6.** MONOPOLIES (§ 21*)—SUIT FOR UNFAIR COMPETITION—DEFENSES.

That a manufacturer sells its product through a system of contracts tending to maintain monopoly in a trade-marked article does not preclude it from maintaining a suit in equity to enjoin unfair and fraudulent competition by another manufacturer of a similar product.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15; Dec. Dig. § 21.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Suit in equity by the Coca Cola Company against the Gay-Ola Company. Decree for defendant, and complainant appeals. Reversed.

Complainant below, appellant here, sought protection against the unfair competition of defendant. The bill of complaint carried as exhibits various letters and circulars of defendant. The answer admitted these letters and circulars, but denied any wrong, in intent or in law, in that connection. Depositions were taken, and upon final hearing the bill was dismissed. It appeared that complainant had put upon the market very extensively a drink known as "Coca Cola," made under a secret formula, that this business had grown up and increased and extended over a period of 20 years, and that the business had become extremely valuable. Complainant's product was in the form of an essence or concentrated liquor, designed to be mixed with water at the time of consumption. This essence had certain peculiarities of taste, color, etc., and was sold by complainant in barrels or kegs, painted with a particular shade of red, and marked with complainant's labels. Purchasers from complainant were of two classes: First, the fountain proprietors, who mixed the essence with carbonated water and sold directly to the consumer; and, second, the bottling companies, who added the necessary carbonated water, and put the product up in sealed bottles, and then sold this article to retail dealers.

Defendant claimed to have discovered complainant's formula, and to be in fact making the same thing. It adopted for its product and for its corporate name the word "Gay-Ola." It proceeded to bring this product into public notice by some advertising under its own name and by some other methods not criticised by complainant—all to an extent not distinctly shown by this record. It also wrote a series of letters to bottling companies which were engaged in bottling Coca Cola, which letters were to the effect that it would sell the bottler Gay-Ola for a less price than he was paying for Coca Cola; that the two articles were just alike, and no one could tell the difference; that the bottler could, if he wished, substitute Gay-Ola for Coca Cola, and his patrons would never know it; that several bottlers, who had been handling Coca Cola, were doing this successfully and without discovery; and that, if the bottler desired, defendant would ship him Gay-Ola in plain, unmarked packages, so that his dealings with defendant would not be observed. Several of the letters in the record are of this substantial effect, though they use different forms of expression, and some only by hint and innuendo convey the invitation to substitute and so to deceive the final purchasers. Defendant also sent circular letters to soda fountain proprietors, setting out the cheap price and the merits of Gay-Ola and its identity with Coca Cola, and quoting from a testimonial of a soda fountain proprietor: "No one can tell it from Coca Cola, and I sell it for Coca Cola, and every one says I have the

best Coca Cola in the city." On these letters, the defendant added the postscript: "For your information, beg to state that we are shipping twenty-one Coca Cola bottlers. 'Nuf said.' "

Candler, Thomson & Hirsch, of Atlanta, Ga., and Lehman, Gates & Martin, of Memphis, Tenn., for appellant.

Brown & Anderson, of Memphis, Tenn., for appellee.

Before WARRINGTON, KNAPPEN and DENISON. Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] An answer under oath was not waived. The answer filed is verified by one of the defendant's corporate officers, and sets up, by way of affirmative defense, that complainant comes with unclean hands and cannot be heard, because its product is misbranded, and because the name "Coca Cola" is deceptive (California Fig Syrup Co. v. Stearns [C. C. A. 6] 73 Fed. 812, 816, 20 C. C. A. 22, 33 L. R. A. 56); but defendant took no proofs. A corporation cannot answer under oath, and even if its answer, when verified by an officer, is evidence under the equity rule, it is not available to prove an affirmative defense. Seitz v. Mitchell, 94, U. S. 580, 582, 24 L. Ed. 179; Ritterbusch v. Atchison, etc., Ry. (C. C. A. 8) 198 Fed. 46, 50. These matters must, therefore, be dismissed from consideration. And see U. S. v. 40 Barrels, etc. (D. C.) 191 Fed. 431.

The substantial question seems to be whether complainant has a remedy against defendant, or whether the remedy is confined to proceedings against that retail trade which is the immediate agent in deceiving the ultimate purchaser. That the defendant has planned and expected a benefit by the fraud so to be practiced, and that it has deliberately furnished to the dealers the material for practicing the fraud, with the expectation and desire that the material be so used, are perfectly plain—indeed, are hardly denied. The ultimate wrong here contemplated is clearly to be classified as unfair competition, within the definitions adopted by the Supreme Court and by this court (Elgin, etc., Co. v. Illinois Watch Co., 179 U. S. 665, 674, 21 Sup. Ct. 270, 45 L. Ed. 365; Merriam Co. v. Saalfield, 198 Fed. 369; Everett Piano Co. v. Maus, 200 Fed. 718, opinion this day filed); and complainant is entitled to such relief as a court of equity can give, unless merit can be found in the defense that the Gay-Ola Company had the right to make and sell the article which it did sell, and that it is not responsible for the fraud of its vendees.

[2] The interposition of equity in this class of cases rests upon the inadequacy of the remedy at law; and this inadequacy consists in the resulting multiplicity of suits, impossibility of computing indirect damages and probable irresponsibilty of many wrongdoers. If these reasons lead to the issuing of an injunction against one of a large number of those who commit the final tort, even more do they indicate the necessity of an injunction against one who is conspiring or co-operating to cause a large number of such torts. Accordingly, we find it recognized by this court that, in a suit for unfair competition, it is

not necessary to show that the immediate purchasers were deceived as to the origin of the goods; but even if they thoroughly understand that they are buying the counterfeit, and not the genuine, the manufacturer of the counterfeit will be enjoined from selling it to dealers with the purpose and expectation that it shall be used by the dealers to deceive the consumer. Garrett v. Garrett (C. C. A. 6) 78 Fed. 472, 476, 24 C. C. A. 173; Royal Co. v. Royal, 122 Fed. 337, 345, 58 C. C. A. 499. And see cases cited in Cyc. vol. 38, p. 778, notes 25 and 26; also Kalem v. Harper, 222 U. S. 55, 63, 32 Sup. Ct. 20, 56 L. Ed. 92. Under the principles on which these cases were decided, we are satisfied that an injunction must go against the defendant. There is no room for it to shift the blame to "tricky retailers," as in Rathbone Co. v. Champion Co., 189 Fed. (C. C. A. 6) 26, 33, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258; defendant is an accomplice, if not the principal, in the trick. With this conclusion established, it is obvious that the injunction should forbid all attempts directly or indirectly to encourage or induce the dealer to make the fraudulent substitution; but complainant also asks that the injunction extend to the use of barrels or kegs painted of the same color as complainant's, and to coloring the product itself with the same color, and to using any packages not plainly marked Gay-Ola. Whether the injunction should have this scope must be considered.

[3, 4] It is first to be observed that defendant is at the best on a narrow ground of legality. The name which it has adopted does not negative an intent to confuse. The product is identical, both in appearance and taste; and the form of script used in printing the "trademark" names is the same. Even if the use of each of these items of similarity was lawful, when accompanied by good faith and no intent to deceive, they put the product near that dividing line where good or bad faith is the criterion, and their presence puts upon the user a burden of care to see that deception does not naturally result. Conversely, when we find, as a fact, from the other conduct of the defendant, that the underlying intent is to perpetrate a fraud upon the consumer, this intent must color the accompanying acts, and some which otherwise might be innocent become guilty. So here. The red color used by complainant on its barrels and kegs is not a color which it discovered, or to which it had any abstract monopoly; but this color has long been used by complainant in a way that was exclusive in this trade. No other manufacturer of analogous or competing drinks uses that color of package, and its adoption by defendant is one of the constituent parts of defendant's scheme of fraud. So, too, with defendant's failure to mark its packages with anything to indicate the place of manufacture. Ordinarily a man may mark his goods, or not, as he pleases; but when he has his marks and labels, which he uses on occasions, and can have no motive for sending out unmarked packages except to aid in a fraudulent substitution, the act, otherwise permissible, becomes forbidden.

The question remains whether the injunction should go to the extent of forbidding defendant to sell Gay-Ola with the identical color it now has; that is, to forbid its sale unless colored so as to distinguish

it from Coca Cola. Defendant contends that such a prohibition is inconsistent with its legal right to make and sell an article which is in fact exactly like Coca Cola. This contention seems unpersuasive in view of defendant's pleading. In its answer it has abandoned the claim of its advertising literature that Gay-Ola is made exactly according to the Coca Cola formula, and urges that its product is a different and better compound. It says that it has improved upon the formula of Coca Cola, while eliminating one of the elements, and that its product is "greatly superior" to Coca Cola. . It thus destroys a considerable part of the foundation upon which rests its claimed right to adopt a color which will be deceptive; but we pass by this consideration.

The record justifies the conclusion that the color is "nonfunctional" —to use the phraseology of the patent law. The bill alleges that Gay-Ola is "artificially and unnecessarily" colored so as to look exactly like Coca Cola. The answer denies this in terms; but it goes on to say that the color is produced by caramel, which is in universal use for coloring purposes, and is used by complainant for coloring Coca Cola. There is here no claim that caramel serves any other purpose in either compound, except merely to give color, and saying that it is one of the "component elements," as one of the witnesses does, is saying nothing more. It follows that the adoption, not only of caramel, but of the selected amount of caramel, was for the main and primary purpose of making the two articles look just alike. In this connection it appears that there is a great variety of coloring materials open to the use of any manufacturer, and selections from which are used by other manufacturers.

The record also requires the conclusion that defendant's business had a substantial basis in this contemplated fraud. Doubtless it intended to try to make a reputation and business for Gay-Ola on its own merits in certain quarters, and perhaps eventually in a general way; but it is clear that in the meantime, and wherever it could, and as the easiest way of getting a large business, it intended to have its product sold as and for Coca Cola. Under these circumstances, we need not consider what the rule would be if the color was the incidental result of an ingredient used for some other purpose, nor yet what the rule would be if the defendant had adopted even a wholly unnecessary identity in color in connection with a good-faith effort to sell its own goods on their own merits. This court has not yet said that a case of fraudulent competition can be made out solely by proof of identity in a nonfunctional particular. Rathbone Co. v. Champion, supra; Hilker Mop Co. v. U. S. Mop Co., 191 Fed. 613, 112 C. C. A. 176. This case is not even one of imitating matters of appearance in an article of common manufacture, like furniture. Globe-Wernicke Co. v. Macey Co., 119 Fed. 696, 704, 56 C. C. A. 304. We rest our conclusion here upon the fact that the color was adopted in part as a means of aiding the contemplated fraud, and that, if its adoption was also in part innocent, there is here a confusion caused by defendant; that the burden is therefore upon defendant to see to it that ultimate fraud does not result from this confusion; and

that, so far as defendant cannot safeguard this result, it may not use the color. There is here marked—indeed, close—analogy to the rule of Westinghouse Co. v. Wagner Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, and to the rule which requires an article which is likely to deceive as to its origin to be distinctly tagged with the name of the real producer. Merriam v. Saalfield, supra. It goes without saying that this tag should be in form adapted to reach the notice of the final purchaser.

As to the bottling part of the output, defendant could apparently provide reasonably efficient means of notice, and so probably prevent deception by seeing to it that all the bottles were stamped and labeled prominently with the name of its product. As to the soda fountain part of the output, we do not at present see how deception could be efficiently prevented, save by giving the product a nondeceptive color, although some other satisfactory means may be brought to the attention of the court below. The defendant should be enjoined from selling Gay-Ola of a color the same as or substantially similar to Coca Cola, unless and in so far as upon settlement of the decree below means may be provided by which the ultimate consumer will be fairly advised that he is not getting complainant's Coca Cola, but is getting something else.

[5] Two matters of affirmative defense require mention: Jurisdiction in this case is founded on diverse citizenship; the complainant being a Georgia corporation, and the defendant a Tennessee corporation. Complainant has a contract with the Coca Cola Bottling Company, of Chattanooga, a Tennessee corporation, by which complainant's entire product intended for bottling purposes in several states, including Tennessee, is sold to this Tennessee corporation, or to other Coca Cola bottling companies scattered over the contract territory, and which are organized as subsidiaries to the Tennessee corporation, and so it is said that the injury done by defendant in inducing these subsidiary bottling companies to substitute Gay-Ola for Coca Cola is an injury to the Tennessee corporation, and it must be made a party, whereby the court will be ousted of its jurisdiction. It is true that the interests of the Tennessee corporation may be affected by this litigation, and it may well be that, under the special circumstances appearing by the record, the Tennessee corporation would be a proper party. It does not follow that it is a necessary party. If the fraudulent substitution of Gay-Ola for Coca Cola is effected by these subsidiary bottling companies, and thereby the deception of the purchasing public is consummated, complainant suffers, not only the direct loss of its sale, but the indirect damage, through loss of reputation and business, which may follow the substitution. These things give complainant a direct and independent interest in preventing the fraud. The fact that the Chattanooga Bottling Company has, for itself and its subsidiaries, the exclusive right to handle all of complainant's product which is devoted to bottling purposes, does not differentiate the case from the ordinary one of manufacturer, jobber, and dealer. The manufacturer cannot be unable to act for the protection of his goods in the retail field, unless he acts through or jointly with the jobber.

[6] The other matter is this: All the subsidiary Cocoa Cola Bottling Companies act in their respective localities under identical contracts with the Chattanooga Bottling Company, which contracts have certain exclusive and price-restricting features which are claimed to make them obnoxious to the Sherman Law; and it is said that the rule of Miles Medicine Co. v. Parks, 220 U. S. 373, 408, 31 Sup. Ct. 376, 55 L. Ed. 502, applies to this situation and requires the complaint to be dismissed. Without considering these premises, it is sufficient to say that we do not so understand that case. It holds that the manufacturer may not have the aid of equity to enforce the very terms of the contract system there involved; it does not hold that the remedies of the Dr. Miles Medical Company to protect itself and the public from fraudulent competition would be destroyed or abridged because of the existence of these contract restrictions; and we see no reason why such a system of exclusive contracts, not tending to establish a monopoly, except in connection with that lawful measure of exclusion which is inherent in a trade-mark and an established business, should have the effect to deny to a complainant that equitable remedy to which he otherwise would be entitled. Indeed, it has been held that a complainant's participation in a violation of the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) does not destroy his right to protection against infringement on trade rights. Brown Saddle Co. v. Troxel (C. C.) 98 Fed. 620; Camors v. McConnell (C. C.) 140 Fed. 412; Weyman-Bruton Co. v. Old Indian Snuff Mills (D. C.) 197 Fed. 1015.

The decree below must be reversed, and a decree should be entered in accordance with the prayer of the bill and this opinion. The appellant will recover costs of both courts.