**B. B. & R. KNIGHT, Inc., et al. v. W. L. MILNER & CO.**

(District Court, N. D. Ohio, W. D. September 29, 1922.)

No. 333.

Trade-marks and trade-names and unfair competition ⬡⟹59(5), 71—Infringement and unfair competition.

Where complainant, owner of the trade-mark "Fruit of the Loom" for cotton piece goods, for 30 years licensed manufacturers of shirts and other garments from such goods to use the trade-mark on condition that they joined with complainant in a warranty of both goods and workmanship, and shirts with such trade-mark became widely known as "Fruit of the Loom" shirts, the action of defendant in having shirts made from the goods, with the words "Fruit of the Loom" stamped on the neckband and bearing labels similar in form and position to those of complainant's licensee, and which it advertised and sold as "Genuine Fruit of the Loom shirts," *held* intended to deceive purchasers and to wrongfully obtain the benefit of the trade-mark reputation, which entitled the owner and its licensee to an injunction.

In Equity. Suit by B. B. & R. Knight, Inc., and another, against the W. L. Milner & Company. On motion for preliminary injunction. Granted.

S. M. Douglas and Brown, Hahn & Sanger, all of Toledo, Ohio, and Clifford E. Dunn, of New York City, for plaintiff.

Doyle & Lewis, of Toledo, Ohio, for defendant.

WESTENHAVER, District Judge. This cause involves alleged infringement by defendant of a trade-mark and unfair competition. It has been fully heard and argued upon an application for a preliminary injunction. Due consideration has been given to the several contentions of parties, and a conclusion has been reached satisfactory to me; but in the press of business I can only submit a memorandum sufficient to inform counsel of the grounds of my conclusion.

The facts are really not in dispute, with perhaps one exception. No extended statement of the case needs to be made. B. B. & R. Knight, Inc., are the owners of a trade-mark in the words "Fruit of the Loom" as applied to cotton piece goods. It has been so used and applied for more than 70 years. This trade-mark has also for more than 30 years been used and applied to various articles of wearing apparel made up from cotton piece goods bearing that trade-mark. Among the articles of wearing apparel thus made up, and to which the trade-mark has been applied, have been men's shirts and boys' blouses. During this period of 30 years, B. B. & R. Knight, Inc., has permitted and licensed manufacturers of men's shirts and other garments to use and apply this trade-mark, but has done so only on condition that the manufacturer join with the owner of the trade-mark in guaranteeing, not only the quality of the goods, but the workmanship, design, and reliability of the finished article. They have selected only reliable manufacturers of high standing, and have required such manufacturers to join with the owner of the trade-mark in such warranty and guaranty, and also in an obligation to refund the purchase price if the ultimate user was for any reason dissatisfied with the article. The obligation to refund the money was one to be performed by both the manufacturer of the article and by the maker of the cloth. Defendant's affidavits put in issue this last practice, but the evidence leaves no doubt that the facts are as stated. As a result of this course of business during a period of 30 years, shirts and similar articles of wearing apparel thus manufactured and guaranteed have become known to the trade as Fruit of the Loom shirts or product. The Ernest Simons Manufacturing Company has during the past 2 years been the exclusive licensee under this course of business for the manufacture and distribution of Fruit of the Loom shirts.

These facts are and have been for a number of years well known to the defendant. At times prior to the year 1922 the defendant has handled and sold at its department store in Toledo, Ohio, shirts and other garments thus made and guaranteed and bearing the usual labels and trade-marks. In the early part of 1922 the Ernest Simons Manufacturing Company constituted the Lasalle & Koch Company, a department store in Toledo, Ohio, the sole establishment in Toledo to sell and handle its output of men's shirts. In the spring of 1922 this department store advertised this product, and particularly men's shirts, as Fruit of the Loom shirts extensively in Toledo newspapers. The defendant, being engaged in a competitive business, was unable to obtain genuine Fruit of the Loom shirts for sale. It then obtained genuine Fruit of the Loom cloth, and had shirts made for it by the Commodore Shirt Company and others, not authorized by B. B. & R.

283 F.—52

Knight, Inc., to use its trade-mark. It is this product and the representations made by defendant, by advertisement and otherwise in selling it, which has produced this lawsuit.

These shirts do not contain the Fruit of the Loom ticket identified as Exhibit B with plaintiffs' bill, but they do bear stamped on the neck-band the legend "Fruit of the Loom," and in the yoke a small label in a similar position and in similar form and appearance to the label of the Ernest Simons Manufacturing Company. This label bears the manufacturer's name, and also the words "Made from Fruit of the Loom." The words "Made from" are the least conspicuous part of this yoke label. The defendant, after procuring this product, inserted certain advertisements in Toledo newspapers. One, dated Wednesday, July 19, 1922, contains the following:

"There are alone over 500 usual $2 printed Fruit of the Loom shirts. * * * All for $1."

In an advertisement dated July 20, 1922, under a display heading, "Shirts on Sale," is the following:

"Fruit of the Loom shirts $1.19. * * * Men's $2 genuine Fruit of the Loom shirts in neat striped patterns."

In an advertisement inserted August 17, 1922, is the following:

"Men's shirts $1.45. * * * Fine assortment of much higher priced shirts —woven and printed Madras, Percale, Repp cloth and genuine Fruit of the Loom muslin shirts."

The evidence shows, as these advertisements imply, that genuine licensed and guaranteed Fruit of the Loom shirts are sold at $2; also that defendant's shirts are more cheaply made and are of inferior workmanship.

Upon the foregoing facts the law is well settled that the defendant's conduct is unlawful and that the plaintiffs are entitled to an injunction. The defendant must be found to have intended to produce confusion by the labeling and markings of its shirts, and particularly by its methods of advertising. It must be found to have done so with the wrongful object and purpose of appropriating some part of the plaintiffs' trade and good will, and of passing out to the purchasing public its shirts under favor of plaintiffs' reputation and good will, built up by many years of labor and advertising. The authorities supporting this conclusion are so numerous, and the law is so well settled, that no citation or review thereof is necessary. Defendant's contention that plaintiffs are not entitled to relief because their method of doing business tends to create a monopoly in restraint of trade, and that therefore they do not come into court with clean hands, is untenable. See Coca-Cola Co. v. Gay-Ola Co. (6 C. C. A.) 200 Fed. 720, 119 C. C. A. 164. That plaintiffs under the circumstances above stated are entitled to have protected the trade-mark as applied to the made-up garments and to prevent any unfair practices with respect thereto, and that defendant's right to buy Fruit of the Loom cloth in bolts and make it up into shirts and sell the shirts made from that cloth, does not give it the right to do what it has done in this case, is shown by the

following authorities; Kraus v. Jos. R. Peebles' Sons Co. (C. C.) 58 Fed. 585; Chas. E. Hires Co. v. Xepapas (C. C.) 180 Fed. 952; Coca-Cola Co. v. Stevenson (D. C.) 276 Fed. 1010, and cases therein cited.

The remaining question is the extent to which defendant should be enjoined. Defendant has the right to buy Fruit of the Loom cloth in bolts and have it made up into shirts and sell it. In doing so, it may inform the purchasing public that its product is made from Fruit of the Loom cloth, provided it does not adopt trade-marks or labeling as applied to such shirts, or make representations, either orally or by advertising, which may or will confuse the purchasing public as to the origin of its product; in other words, it is charged with the affirmative burden and duty of not confusing the shirts thus made, with the genuine Fruit of the Loom shirts. In view, however, of defendant's wrongful conduct, this court might well enjoin defendant from exercising these rights with respect to its stock on hand, on the theory that this is necessary to prevent defendant from profiting by its wrongful conduct. For authorities to this effect, see Cheney Bros. v. Gimbel Bros. (D. C.) 280 Fed. 746; Eli Lilly & Co. v. Wm. R. Warner & Co. (3 C. C. A.) 275 Fed. 752; Coca-Cola Co. v. Gay-Ola Co. (6 C. C. A.) 200 Fed. 720, 119 C. C. A. 164.

On the other hand, if this be not necessary, the court may permit the defendant to sell its product under the limitations and safeguards imposed in Singer v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, and similar cases. On the whole case, I am disposed to think that it would be unnecessarily harsh to prohibit defendant from selling and disposing of the shirts on hand, or to forbid it absolutely and under any circumstances from exercising in the future, within lawful limits, its right to procure Fruit of the Loom cloth, have it made up into shirts and sell the same. I am disposed to permit the defendant so to do, provided it assumes and fully performs the burden of clearly marking and advertising its product in such a way that there will be no reasonable prospect of confusing the purchasing public or of appropriating to itself any part of the trade or good will of plaintiffs in their product.

Plaintiffs' counsel has submitted a form of order. This order meets with my approval, except the last three lines, beginning with the words "and from selling," etc. The order to be entered may provide that defendant may sell its shirts now in stock, on condition only, however, that there be first placed thereon a distinctive and conspicuous label stating that they are not genuine Fruit of the Loom shirts, made by plaintiffs or any of their licensees, but are made by other manufacturers, whose names must be correctly given, and from making any other representations with respect thereto than that they are made from the same material as that from which are made the genuine Fruit of the Loom shirts. No oral representation or advertisement in making such sales may be made with respect to the material therein which does not conform to these limitations. If the defendant desires to procure Fruit of the Loom cloth and have the same made up into shirts, it must omit from the neckband the legend "Fruit of the Loom," and must also refrain from placing thereon a yoke label of the kind found

upon its present product. All advertisement with respect thereto must conform to the limitations herein stated.

Plaintiffs may submit a draft of order in conformity herewith. Bond is required in the penalty of $3,000, with good security, conditioned to pay all costs and damages which may be sustained by the defendant or awarded against plaintiffs in the event this injunction shall be dissolved.