BUFFALO YELLOW CAB CO., INC., Plaintiff, *v.* JULIUS BAUREIS, Defendant.

Supreme Court, Erie County, August 2, 1928.

**Trade-marks and trade names — unfair competition — defendant restrained from operating taxicabs that imitate yellow cabs of plaintiff — accounting denied.**

This is an action to restrain the defendant from operating taxicabs painted and decorated in a manner similar to cabs operated by the plaintiff. The evidence shows that the plaintiff had been operating a taxicab service since 1921; that its cabs had been painted yellow and had been known as " yellow cabs; " and that in other ways the decorations on the cabs are distinctive. The defendant, who operates a smaller number of cabs, painted his cabs yellow and had inscribed thereon a telephone number, using the same exchange as that of the plaintiff although the defendant did not have a telephone under his own name.

The defendant is enjoined from operating taxicabs that imitate the yellow cabs of the plaintiff, either as to color or other markings on the body that will tend to deceive the public into believing that they are the cabs of the plaintiff.

The plaintiff asks for an accounting, but it is impossible to determine the loss, if any, suffered by it.

ACTION perpetually to enjoin the defendant from operating taxicabs which closely resemble taxicabs of the plaintiff.

*Wilbur B. Grandison* [*Ethan W. Judd* of counsel], for the plaintiff.

*John H. Clogston*, for the defendant.

NOONAN, J.  The plaintiff is a domestic corporation operating a large number of taxicabs and " sight-seeing " cars in the city of Buffalo, N. Y., and vicinity, and the defendant is the owner and operator of four taxicabs which are painted almost exactly like the great majority of taxicabs owned and operated by the plaintiff. On the ground that this is unfair competition, the plaintiff seeks to perpetually enjoin and restrain the defendant from operating taxicabs which so nearly resemble its taxicabs as to deceive or tend to deceive the public.

The plaintiff has been continuously in the taxicab business in Buffalo and vicinity since May, 1921. In May, 1922, the first " yellow cabs " were used in Buffalo by the Buffalo Taxi Service

and Sight Seeing Company, Inc., which put eight cabs into public service. On account of their distinctive color they were quickly known as public and not private cars. Business increased and additional cabs were purchased from time to time, so that said company had fifty-two yellow cabs for service in Buffalo and vicinity when, on or about September 1, 1926, the plaintiff acquired all the rights, title and interest in and to the business of said Buffalo Taxi Service and Sight Seeing Company, Inc., including the ownership, operation and good-will of the entire line of taxi-cabs known as "yellow cabs," then being operated on the streets of Buffalo and vicinity, so that the plaintiff becomes entitled to all the rights and benefits that had accrued to said company, and any reference herein to the plaintiff is deemed to include its said predecessor in interest.

From a small beginning, the plaintiff, by advertising, strict attention to business and other legitimate methods, built up a large and valuable business. It owns and maintains a large garage, with adequate telephone service and sub-stations at strategic points where its cabs may be quickly obtained, and at the commencement of this action it had seventy-five "yellow cabs" in service.

The "yellow cabs" used by plaintiff have all been of the same general design, although the later ones are a little larger, but the painting is their distinctive characteristic. From the very beginning the top and running gear have been painted black. At first the hood was also black, but for some five or six years past the entire body and wheels, except tires, have been an orange-tinted yellow. The words "yellow cab" are painted on all the rear doors, and the plaintiff's telephone number, "Tupper 8300" on all the front doors. Recently, however, the telephone number has been placed on both sides of the hood of the new cars. In the space between the hood and front doors the rates of fare are stated. Across the rear, just above the body, is the following: "Yellow Cab — *Tupper* 8300" and above the rear window is the number of the cab.

The defendant started in the taxicab business in the late fall of 1927, with a taxicab that he purchased from a man known as "Jack." It was painted generally like the "yellow cabs" of the plaintiff, but a lighter shade of yellow. The telephone number, *Tupper* 9339, the cab number and the lettering on the doors and elsewhere were all in the same relative positions as on the cabs of the plaintiff, but the wording was changed. In place of "yellow cab" on the rear doors defendant put the following: "Bonded Cab" "Safety First." Tupper 9339 was the telephone in "Jack's" rooming-house. The defendant was not permitted to use this

number and changed to Tupper 9869, which was a " pay-station " in a public garage, without anyone to answer the *incoming* calls. The defendant did not go regularly to this garage to answer any calls that might come in.    He deliberately selected a number in the *Tupper* exchange, where plaintiff's number had to be, which obviously would not help him secure any business.    Soon after starting in business the defendant bought three *new* Nash sedan. which, outwardly at least, closely resembled the taxicabs of plaintiffs They were all painted a dark blue, but the defendant immediately had these *new* sedans repainted exactly like the yellow cabs, including the black stripes, except the telephone number and the lettering on the sides and back.    When this was done there were many other colors and color schemes available for defendant's use in entering the taxicab business with an effective line of taxicabs. Instead of doing this his imitation of the plaintiff's cars was deliberate and has been persistent.    His cars in outward appearance are so nearly like those of the plaintiff, in almost every particular, that it is apparent that the traveling public might be deceived thereby.

The plaintiff contends that the deliberate imitation of its taxicabs by the defendant, particularly as to the coloring or painting scheme, was a deliberate plan of the defendant to secure business that would naturally go to the plaintiff and thus is unfair competition, and it has come into the court for such relief as the law will give.

While it is true that no one has an exclusive right to the use of the primary colors (*Buffalo Taxi Service & Sight Seeing Co.* v. *Howell*, 125 Misc. 780), the courts have protected the rights of those who have established a business and acquired a good will by the use of color schemes on vehicles under the so-called " doctrine of secondary meaning," which is stated in 38 Cyc. 769, as follows: " Words or names which have a primary meaning of their own, such as words descriptive of the goods, or the place where they are made, or the name of the maker, and which are not capable of exclusive appropriation as a trade-mark, may nevertheless by long use in connection with the goods or business of a particular trader come to be understood by the public as designating the goods or business of that particular trader.    Such words have both a primary and secondary meaning.    In their primary descriptive sense, they are *publici juris*, and all the world may use them, but they must be used in such a way as not to falsely convey the secondary meaning, for this would constitute unfair competition as tending directly to pass off the goods or business of one man as and for that of another.    This is what is known as the doctrine of secondary

meaning. Its perception by the courts was the genesis of the law of unfair competition as distinguished from technical trademarks. In all this class of cases where the word, name, or other mark or device is primarily *publici juris* the right to relief depends upon the proof. If plaintiff proves that the name or word has been so exclusively identified with his goods or business as to have acquired a secondary meaning, so as to indicate his goods or business and his alone, he is entitled to relief against another's deceptive use of such terms. If he fails in such proof, he is not entitled to relief. There is an exclusive right to the secondary meaning of a name, which has been deemed a property right, in the same sense that technical trade-marks are property. This exclusive right is strictly limited to the secondary meaning of the word. Use by others may not be absolutely prevented. Merely the misleading manner of using it will be enjoined, leaving defendant at liberty to use it in all honest ways not deceptive. It is the duty of the court to regulate the use which may be made of this class of names so as to preserve the rights of both parties with as little injury to either as is possible. Practically the whole law of unfair competition is an application of these principles. Unfair competition by means of generic, descriptive, personal, and geographical names are common instances."

This same principle is upheld in Nims on Unfair Competition ([2d ed.] 28–30) and by numerous decisions of the courts. In *Taxi & Yellow Taxi Operating Co.* v. *Martin* (91 N. J. Eq. 233) the head-note is as follows: " It is unfair trade, for which an injunction will issue, for competitors to paint their taxicabs so that by the ordinary patron they are not distinguished from those of complainant which had earned a patronage and good-will under a peculiar and distinctive painting of its cabs, the predominant feature being the conspicuous yellow body. The defendants are barred by their intentional fraud of the plea common property in color." (See, also, *American Yellow Taxi Operators, Inc.*, v. *Quinn*, 118 Misc. 499; *Checker Cab Mfg. Co.* v. *Sweeney*, 119 id. 780; *Yellow Cab Corporation* v. *Korpeck*, 120 id. 499; *Yellow Cab Co.* v. *Creasman*, 185 N. C. 551.)

In *Yellow Cab Co.* v. *Creasman* (*supra*) the court said: " That while there are numerous points of slight variation and differences in both the details of structural design and shades of color between the cabs of the plaintiff and defendant, these differences are not sufficient to render the respective cabs distinctive from ordinary observation; that the outstanding distinctive feature of the yellow color · in combination with black on the cabs of both plaintiff

42

and defendant are so similar as to render the differences and variation insignificant and unnoticeable, the general appearance of both being a yellow cab."

The doctrine seems to be pretty well established that the first person in the field with a distinctive color scheme who builds up a paying business will be protected by the court from the competition of those who thereafter attempt to profit by imitating the first established business. (*Yellow Cab Co. of San Diego* v. *Sachs*, 191 Cal. 238.)

To entitle the plaintiff to relief it is not necessary for it to show actual deception by the defendant. (*Vulcan Co.* v. *Myers*, 139 N. Y. 364; *Dunlap & Co.* v. *Young*, 68 App. Div. 137; *Dutton & Co.* v. *Cupples*, 117 id. 172.) Neither is it necessary for the plaintiff to show fraudulent intent where the court is convinced that the imitation was planned to deceive for the court has a right to assume that everyone must be understood to have intended to do and abide by the consequence of his own deliberate act. (*Burrow* v. *Marceau*, 124 App. Div. 665; *Dunlap* v. *Young, supra; Yellow Cab Co.* v. *Creasman, supra.*)

Unquestionably the plaintiff was the first in the field here in the use of the " yellow cabs " and long before the defendant started in business the yellow color was a feature which quickly distinguished this cab from a private car. (*Buffalo Taxi Service & Sight Seeing Company* v. *Howell, supra.*) From all the facts in the case it seems to me that the defendant's taxicabs were operated deliberately with an intention to deceive and to obtain business that otherwise would naturally go to the plaintiff. This is unfair competition, and consequently the plaintiff is entitled to a permanent injunction restraining the defendant from the use of any taxicab which so resembles the yellow taxicabs of the plaintiff as to deceive or tend to deceive the public.

The plaintiff has asked for an accounting but it is manifestly impossible to get at anything tangible in a matter of this sort.

The plaintiff may have a judgment in its favor and against the defendant, with costs, permanently restraining the defendant, on and after September 1, 1928, from using any taxicabs that imitate the yellow cabs of the plaintiff, either as to color or other markings on the body of the car which will tend to deceive the public who would be apt to use the yellow cabs of the plaintiff.

Let findings and judgment be prepared accordingly.