## GILLETTE SAFETY RAZOR CO. v. TRIANGLE MECHANICAL LABORATORIES CORPORATION et al.

### No. 6650.

District Court, E. D. New York.

May 4, 1933.

On Application for Settlement of Final Decree, June 1, 1933.

Settlement of Decree June 28, 1933.

Nims & Verdi, of New York City (Harry D. Nims, Wallace H. Martin, and M. L. Severn, all of New York City, of counsel), for plaintiff.

Louis Soll, of New York City (Morris Kirschstein, of New York City, of counsel), for defendant Triangle Mechanical Laboratories Corporation.

Arthur G. Solomon, of New York City, for defendant Holtz.

INCH, District Judge.

The plaintiff, a Delaware corporation, has sued the defendants alleging infringement of its United States trade-marks and of unfair competition.

The defendants are a New York corporation which, for convenience, will be hereafter referred to as the Triangle Corporation, and two citizens of the state of New York, doing business under the trade-name of "Jacob Holtz."

Answers were duly interposed by these defendants and the issues raised have been duly tried.

No question of jurisdiction has been raised, nor can there be any such question in this case. Title 28, U. S. C. § 41, 28 USCA § 41 (section 24 of the Judicial Code).

Moreover, there is really one cause of action asserted but on different grounds, one of these being the violation of registered trade-marks. Hurn, etc., v. Oursler et al., 53 S. Ct. 586, 77 L. Ed. —— (decided April 17, 1933).

The relief asked for by plaintiff in its complaint is that the defendants be enjoined: From using in their advertising and sale the term "Gillette," "Gillette Type," "Gillette Razor," "Blue Blades for Gillette Razors," "Blue Steel," or any similar term. From representing that defendants' razor blades are "Blue Blades." From manufacturing, selling, and offering for sale safety razor blades of a "blue" color or which are placed in packages colored wholly or partially "blue," or which are "blue" and use the name "Gillette." From selling or offering for sale packages and blades dressed in "blue" such as "Navy Blue Blade," "Sapphire Real Blue Steel Blade," "Goodyear Blue Blade," "Uneeda Genuine 'Blue' Steel Blade." From advertising, selling, or offering for sale razor blades not of plaintiff's manufacture in combination with plaintiff's "Gillette" razor frames, without clearly indicating that the blades so sold are not made or sold by plaintiff. And, generally, from passing off, inducing or enabling others to sell or pass off, any safety razor blade or razor frame not the plaintiff's as and for the plaintiff's product.

It will be seen at a glance that while plaintiff seeks in detail the above injunctive relief, in fact that which plaintiff seeks is that the court stop the defendants from violating plaintiff's trade-marks and from unfairly competing with plaintiff in the safety razor frame and "blue" blade business in this country.

A great deal of testimony has been taken. Much of it is not disputed.

Briefly the facts are that the plaintiff at that time a Maine corporation, about thirty years ago, entered the safety razor field. This was in 1901. A year or so later its product was identified by the name "Gillette"; a few years thereafter by the additional "portrait and signature of King C. Gillette." In 1917 the plaintiff was incorporated, under the laws of the state of Delaware. It succeeded to the business.

Plaintiff is possessed of the following trade-marks duly registered in the United States Patent Office: No. 134,317, "Gillette." This was first used in 1903 but was not registered until 1920. No. 56,921, "portrait and signature of King C. Gillette," registered 1906. No. 70,856, "Gillette pierced by arrow, within a diamond," registered 1908. No. 291,052, "combination of features with 'blue' color," registered 1932. No. 294,217, "a combination of features including the words 'Blue Blades' with a disclaimer of the word 'Blue' except in association with the word 'Gillette' and with reservation of common-law rights in the word 'Blue' and 'Blue Color' indicated," registered May 24, 1932. This had been used since October 27, 1931.

There are other trade-marks registered elsewhere, but the above is sufficient to show both the facts of ownership and the nature of the trade-marks of plaintiff claimed to have been here infringed.

There is no proof here that the defendants or any of them used, in manufacture or sale, the trade-marks indicating the "portrait or signature of King C. Gillette" or the trade-

mark "Gillette" in manufacturing safety razors or safety razor blades.

The controversy really arises from the use by the defendants of the words "blue blades" and the use of the "blue color" on its packages containing safety razor blades and the use of the word "Gillette" by the individual defendants in the sale thereof.

While due consideration of plaintiff's trade-marks must be given in view of its claim, the substantial issue arises from alleged unfair competition on the part of defendants.

We may now, briefly, refer to certain other facts.

The razor blades of plaintiff are the natural steel which, for convenience, may be said to be "white." Along in July, 1931, plaintiff commenced an extensive advertising campaign which announced to the United States that plaintiff's razor blades were thereafter to be of a "blue" color and in a "blue" package. This blue color was at first obtained by the application of a blue lacquer to the white steel. Thereafter plaintiff changed this process, somewhat, by first oxidizing the steel blades which in itself produced a blue color and then applied the blue lacquer. By May, 1932, plaintiff's product was so produced extensively. On May 24, 1932, as has already been shown, it obtained the registration of its trade-mark for the "Gillette Blue Blade." It disclaimed the word "blue" except in association with the word "Gillette," but it reserved its rights to be protected from unfair competition, in connection with the words "blue" and "blue color."

Over a million dollars has been spent by plaintiff in the above extensive and unique form of advertising.

It can safely be said that the evidence shows that the general public, due to this advertising, were urged to associate the razor blade of plaintiff with the term "blue blade." At the same time, so far as I can discover from a careful examination of the testimony, and the exhibits, the "blue packages" of plaintiff's razor blades and its razor blade all carried the identifying "portrait," "signature," or name of "Gillette." In other words, many customers, desiring plaintiff's product, thereafter asked for "Blue Blades," while others asked for "Gillette Blue Blades"; but nothing is shown to indicate clearly that plaintiff had so abandoned its said identification of name, etc., that every "blue blade" in the market would naturally be considered that of plaintiff's manufacture.

I find that both the words "blue" and blue color on packages, in connection with safety and other razor blades, were known to some extent previous to the adoption of same by plaintiff. The oxidation of steel, producing a blue color, was a well-known process long before. The idea, however inaccurate, that "blue" steel was better than steel has long existed.

"Secondary meaning is 'association' nothing more. It exists only in the minds of those of the public who have seen or known or have heard of a brand of goods by some name or sign and have associated the two in their minds." Nims, Unfair Competition (3d Ed.) p. 105.

The test of "secondary" meaning arises in the associated product and its origin in the mind of the public and no specific length of time is required. Nevertheless such secondary meaning must be proved by a fair preponderance of evidence. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 S. Ct. 270, 45 L. Ed. 365; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 S. Ct. 350, 52 L. Ed. 616; Shredded Wheat Co. v. Humphrey (C. C. A.) 250 F. 960; Upjohn Co. v. Wm. S. Merrell Chemical Co. (C. C. A.) 269 F. 209.

The following is applicable to the facts of this case: "A merely descriptive term or the name of a person or place may have become associated with a particular kind of goods or the product of a particular manufacturer in such a way that merely attaching the word to an article of the same kind would amount to a misrepresentation as to the origin of the article. In such case, while the use of the word cannot be prohibited, it may be enjoined unless accompanied by such information and precautions as will unmistakably distinguish the article from the goods of the original manufacturer or vendor and will prevent deception of purchasers." DeLong Hook & Eye Co. v. Hump, etc., Co., 297 Ill. 359, 130 N. E. 765, 768.

Confining ourselves solely to the question of the right to use the term or words "blue blades" or "blue," it seems to me that plaintiff has no exclusive right to such term or word and has failed to prove by a fair preponderance of evidence such a public sanction of plaintiff's appropriation thereof as to justify a finding that the general public has thereby adopted same as the indicia of origin of all blue blades in plaintiff. Upjohn Co. v. Wm. S. Merrell, etc., Co. (C. C. A.) 269 F. 209.

On the facts of this case, therefore, I do not find, in spite of the extensive advertising, that plaintiff has succeeded in securing for itself such a "secondary" meaning of the word "blue" or "blue blade" as is now contended for by plaintiff. Accordingly, plaintiff must· rely, it seems to me, for its protection on its common-law rights, the right to have unfair competitors stopped from misleading the public.

Here was an excellent razor blade, produced by a recognized manufacturer, with the widest sort of publicity, requiring the expenditure of a very large sum of money in advertising to the public its "new blue blade" and in a "blue package." It was a success.

Very plainly this was the alluring situation, in the summer of 1931, opened to those manufacturers and sellers of "white" safety razor blades which might wish to unfairly and wrongly appropriate the good will, and the money, of plaintiff, by confusing the mind of the public, into believing that in buying the goods of such other manufacturers they were in fact buying the goods of plaintiff. .

Where the proof shows that the necessary and probable tendency of defendants' conduct is to deceive the public, a court of equity will intervene. Coty, Inc., v. Parfums De Grande Luxe (C. C. A.) 298 F. 865.

The law does not require that any particular person be shown to have been duly misled, if the natural and probable result would lead to such confusion. Rice & Hutchins v. Vera Shoe Co. (C. C. A.) 290 F. 124.

In the present case we have ample evidence of actual confusion. Plaintiff produced more than fifty witnesses who so testified and offered to produce many more. In fact, actual confusion and deception is not so easily obtained. Gehl v. Hebe Co. (C. C. A.) 276 F. 271. That plaintiff has been able to produce so many indicates what confusion there really may be.

One may not legally use means with the purpose and to the end of selling his goods as the goods of another and thus attract to himself trade that would have flowed to that person. Pillsbury v. Pillsbury-Washburn-Flour Mills Co. (C. C. A.) 64 F. 841.

Plainly plaintiff has no adequate remedy at law in such a situation as is here indicated. We may therefore turn to what these defendants have done.

It will be recalled that plaintiff's "new blue blade" first came on the market in July, 1931. It was followed by the first "blue" blade advertising in August, 1931. The first "blue blade package" was used in October, 1931. In January, 1932, plaintiff experimented with "oxidizing" the blade, and in April, 1932, combined the "oxidizing" with the "blue" lacquer.

It is fair to say that by this time the market, as well as the general public, was well aware that the plaintiff was manufacturing and selling what was termed a "new" blade or a "new blue blade."

In August, 1932, the defendant Triangle brought into the market a "blue blade" in a "blue package" without the slightest indication who manufactured it or where it came from. The package bore the title "Navy." So much for the corporate defendant.

As to the individual defendants Jacob and Abraham Holtz, they likewise commenced on or about September, 1932, to very plainly unfairly compete with plaintiff. We might as well take up the case against these two individual defendants first. This unfair competition of theirs was accomplished by a "vending" scheme. This scheme or "racket" · consisted of furnishing to a person what was termed a "deal" for a certain fixed price to be paid to Holtz. The "deal" consisted of "sets" composed of a combination of articles, consisting of safety razor blades, a razor frame, shaving cream, etc. An important part of this scheme was a so-called coupon which was prepared by the person undoubtedly with the full knowledge of Holtz, and in fact there is evidence that they had, in one instance, outlined the important part of this coupon. This coupon notified the citizens that they were about to obtain a great bargain (see Plaintiff's Exhibits 23 and 28) and that for a comparatively small sum of money such citizen could, by presenting the coupon at the specified place, such as a particular drug store, obtain the "set" combination which if purchased in any other manner would cost them very much more.

A large number of these coupons were thereupon distributed in the mail boxes and at the homes of the citizens in that particular vicinity and naturally caused interest and awakened the natural desire to obtain this bargain.

Up to this point this selling campaign or scheme might be unobjectionable from the plaintiff's standpoint were it not for the following very important item: The citizens must be induced that there is a "bargain," otherwise the whole plan falls flat, as was indicated by an instance testified to where this

alleged bargain (omitting the name Gillette) did not attract.

Accordingly these individual defendants led the citizens to believe by the form of this coupon that by it could be obtained ten of the "new type blue blades" of plaintiff's or five of such blades with one of plaintiff's razor frames at a greatly reduced price.

I find this is so for the reason that while that direct statement is not made, the words "New Style Blue Blade" is so coupled with the word "Gillette" that, bearing in mind the extensive advertising of plaintiff of this new style blue blade, no one can read these coupons without reasonably being persuaded that it was plaintiff's product that could be had at this greatly reduced price.

In fact, there is sufficient testimony in the record to indicate that this conclusion was the one arrived at by a large number of citizens.

While this scheme was a subtle one, its fraud is plainly exposed when all the facts are considered. People bought these sets and then found that they had received razor blades manufactured by an unknown concern. Thus did the individual defendants steal the good name of plaintiff and do irreparable damage to it, for no one can trace the widespread effect of such unfair competition, and what in an individual case might be a trifling matter when multiplied throughout this country becomes serious in character from the manufacturer's standpoint.

I am convinced that all the defendants deliberately and intentionally took part and made possible this unfair competition with plaintiff.

The supply of "blue blades" came from the defendant corporation the Triangle, although on occasions a different name was used on the package wholly insufficient, however, to indicate to the customer any source of the razor blades unless it was the plaintiff.

This brings us to the corporate defendant the Triangle.

This corporation is a manufacturer of razor blades. As late as April, 1932, its product was "white." In August, 1932, shortly after plaintiff had come on the market with its "new blue blade," this defendant changed the color of its razor blades from "white" to "blue." This was done not by lacquer but by oxidizing. Nevertheless the change is significant. It likewise commenced to market its products in "blue packages." It should be borne in mind that the plaintiff was also using a blue package. In September, 1932, the Triangle began to sell its blue blades in a blue package to jobbers and retail dealers, among them being the defendants Holtz. Holtz had previously been selling "white" blades in a "red and black" package, but now, as I have already indicated, they changed to the "blue" color package and the "blue blades" of the Triangle. Thus the Triangle knowingly made it possible for Holtz to perfect their fraud upon the customer.

If this combination between the Triangle and Holtz, for a part at least of the Triangle's production, was all that was to be decided, there would be no difficulty in allowing plaintiff all the relief it asks. But it is not all.

Plaintiff seeks to obtain something that has been unsuccessfully sought for by other large and important manufacturers in other fields.

It seeks, because it has extensively advertised its products in the form of a certain "color," to monopolize that color for safety razor blades in the United States. This it cannot do.

The Triangle, as well as other manufacturers, has the right to use "blue" or "red" in their colored razor blades. It has no right, however, to confuse the mind of the public with its razor blades with those of the plaintiff.

To be sure the public is considered to be rather careless in regard to such things, but nevertheless a certain amount of good sense must reasonably be required of a citizen, and just because some concern, by means of large expenditure of money, makes more "blue" razor blades than some smaller yet reputable concern, does not mean that the citizen is thereby justified in believing that thereafter all blue safety blades must be the product of the larger concern, otherwise if one large concern can take "blue" another can take "red," etc., and some concerns may take "white" if that may be termed a color.

A concern, however, must clearly identify its product by something more distinctive and individual than a mere color. The plaintiff has done this. It has used the word "Gillette" and it has used the "portrait and signature of Gillette."

Color itself is free.

The doctrine of unfair competition cannot be successfully invoked to abridge the freedom of trade competition. Kawneer Co. v. McHugh (D. C.) 51 F.(2d) 560-564. Viavi Co. v. Vimedia Co. (C. C. A.) 245 F. 289.

It has been said by the Supreme Court: "The product, including the coloring matter, is free to all who can make it if no extrinsic deceiving element is present." Coca-Cola Co. v. Koke Co., 254 U. S. 143–147, 41 S. Ct. 113, 114, 65 L. Ed. 189; Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co. (C. C. A.) 20 F. (2d) 298.

"The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another; and if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails." Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118–140, 25 S. Ct. 609, 614, 49 L. Ed. 972.

Nevertheless while this general proposition is true as to mere color, if color is proven a part of intentional fraud, such fraud will be stopped. It is, however, not the use of a color, but the fraud perpetrated by the intentional appropriation of the color, that is enjoined.

Thus we find any number of instances where such fraud has been stopped, cases in which the adoption of a color or combination of colors has played an important part. Coca-Cola Co. v. Gay-Ola Co. (C. C. A.) 200 F. 720, 722; Coca-Cola Co. v. Koke Co., 254 U. S. 143–147, 41 S. Ct. 113, 65 L. Ed. 189; American Chain Co. v. Carr Chain Works, 141 Misc. 303, 252 N. Y. S. 860; Yellow Taxi cases: Buffalo Yellow Cab Co. v. Baureis, 132 Misc. 654, 230 N. Y. S. 343; Yellow Cab Corp. v. Korpeck, 120 Misc. 499, 198 N. Y. S. 864; Yellow Cab Co. v. Jones, 156 La. 837, 101 So. 216; Taxi & Yellow Taxi Operating Co. v. Martin, 91 N. J. Eq. 233, 108 A. 763.

In considering whether there is such intent to use the color, the fact that the color used is nonfunctional may be some evidence of such intent, as in such case there is no real reason for adopting it. Rushmore v. Badger Brass Mfg. Co. (C. C. A.) 198 F. 379; Wesson v. Galef (D. C.) 286 F. 621.

Thus it is necessary for plaintiff, if an alleged unfair competitor is using a similar color, to prove use of that color as a part of the fraud shown by the unfair competition. When such intentional use is sufficiently shown directly or by fair inference, from proven facts, the court will prevent further unfair competition of this kind although a color is used. Plaintiff having proved such a prima facie case, the burden is then upon the defendant to show steps to avoid the confusion in the mind of the public. Plaintiff will succeed unless the defendant can safeguard this result. Coca-Cola Co. v. Gay-Ola Co.

(C. C. A.) 200 F. 720, 722; American Chain Co. v. Carr Chain Works, 141 Misc. 303, 252 N. Y. S. 860.

The mere fact that a competitor, so unfairly competing, finds it cheaper to use a color that is a part of the scheme, is insufficient, Helmet Co. v. Wm. Wrigley, Jr., Co. (C. C. A.) 245 F. 824, or that it was more durable, Taxi & Yellow Taxi Operating Co. v. Martin, 91 N. J. Eq. 233, 108 A. 763.

Plaintiff has shown sufficiently the intent of all of the defendants to unfairly compete by the manufacture, sale, and use of "blue safety razor blades" without plain designation of origin.

It is unnecessary to recapitulate the various acts of defendants, already briefly referred to in this opinion, except to say that when all are taken into consideration it is plain that what these defendants intentionally sought to do was to confuse the mind of the public as to the origin of "blue safety razor blades" in a "blue package."

In other words, they intended to sell or make possible the sale of their goods for those of plaintiff. Such competition will be enjoined. And this is so whether defendant Triangle, partly innocently, resorted to "oxidization" rather than the more audacious plan of blue lacquer.

The burden therefore rests upon the defendants, whether they are the manufacturers or sellers of these "blue blades," to safeguard the plaintiff from the confusion which their conduct, up to the present time, has caused.

What they should have done, if in good faith, was to have made it plain both on the razor blades and on the packages that this was a product of the Triangle and not of plaintiff. In fact, a manufacturer who seeks to fairly compete with others would naturally endeavor to build up its trade by making plain to a citizen that he is buying the product of that manufacturer and that it should not be confused with any other. That is what the plaintiff is doing, but these defendants have not proven any step necessary to show the court that their intentions are similar.

The defendants, in addition to denying any infringement of trade-mark, primary or secondary, deny any proof of unfair competition presumptive or actual and ask permission to continue to manufacture and sell "blue oxidized blades" in "blue packages" and to merely describe the blades as "blue blades."

I find that the proof sufficiently indicates not only an intent to unfairly compete by the adoption of the blue color by the defendants,

but that actual unfair competition has resulted by the failure of defendants to properly safeguard the plaintiff against the confusion which has arisen from their fraud.

This being so, plaintiff is entitled to a decree enjoining the defendants from further unfair competition of this sort.

This does not mean, however, that the defendants cannot make or sell "blue safety razor blades," or those of any other color, in "blue packages," or that of any other color, provided such razor blades and packages are distinctly and conspicuously marked, advertised, and sold so as to plainly show to a citizen that such product is that of the defendants and is not in any way the product of plaintiff. Coca-Cola Co. v. Gay-Ola Co. (C. C. A.) 200 F. 720–725. This puts no hardship on an honest manufacturer or seller. Let them stand on their own feet and seek to build up their own good will.

Decree for plaintiff in accordance with the above. Settle decree on notice.

### On Application for Settlement of Final Decree.

Settlement of final decree. The findings of fact and conclusions of law submitted by plaintiff have been signed as presented by plaintiff. Costs have been allowed plaintiff to be duly taxed, the amount thereof to be inserted in the final decree when submitted for signature.

The proposed decree submitted by plaintiff has not been signed in the form as submitted, and an exception is granted plaintiff to this refusal so as to preserve to the plaintiff any rights it may claim to have in the event of an appeal by either party.

The final decree herein will be signed in the form proposed by plaintiff with the following changes:

(a) After the word "thereto," unless both the blade and the package containing same is distinctly and conspicuously marked with the name of the manufacturer so as to plainly show the public that both the blade and the package containing same is not the product of the plaintiff.

(b) Unchanged.

(c) The defendants may sell blades and packages colored blue, but are enjoined from placing or causing to be placed in the hands of retail dealers, jobbers, or others, blue safety razor blades so packed as to reasonably suggest or facilitate a substitution as and for Gillette Blue Blades or likely to be, in the hands of such dealers and others, an instrument of fraud on plaintiff or which are colorable imitations of the packages of the plaintiff. Both the packages and blades must bear the full name of the manufacturer in letters readily discernible by the public and as large as the blade and package reasonably may permit, bearing in mind that the purpose of same is to prevent the public from thinking that they are getting plaintiff's product and to prevent same being known, designated, mistaken, substituted, or passed off as and for plaintiff's product.

(d) Unchanged.

(e) Unchanged.

When the decree in the above-amended form is presented it will be signed. The plaintiff is entitled to a practical injunction. It is not the province of a court of equity to aid possible wrongdoers. Oneida, etc., v. Oneida Game Trap. Co., 168 App. Div. 769, 154 N. Y. S. 391; Thum Co. v. Dickinson (C. C. A.) 245 F. 609; Hires Co. v. Consumers' Co. (C. C. A.) 100 F. 809.

While color is free there is no freedom to commit a fraud.

There is no immunity to be gained by the use of a color when same is used as part of a fraud.

While violation of an injunction may be a question of fact in each case and honest competitors should know what is and what is not forbidden, there is no necessity for the court to anticipate a fraud by detailed forbidden acts which may be readily availed of as excuses by persons whose purpose is not to fairly and justly deal with the public and the victim of their unfair competition and who intend to unfairly compete with a competitor, large or small, and thus steal its good name and money.

### Settlement of Decree.

Plaintiff is entitled to a practical injunction. Oneida, etc., v. Oneida Game Trap. Co., 168 App. Div. 769, 154 N. Y. S. 391, at page 399; Barton v. Rex-Oil Co. (C. C. A.) 29 F.(2d) 474 (re-hearing). There is no inconsistency between the decree and the decision. For though the proof of secondary meaning may be insufficient (see trade marks), the right, on the facts of this case, to protection from unfair competition is clear. Edward G. Budd, etc., Co. v. C. R. Wilson, etc. Co. (D. C.) 7 F.(2d) 746, at page 749, affirmed (C. C. A.) 21 F.(2d) 803; Thum Co. v. Dickinson (C. C. A.) 245 F. 609, at page 627.

It is ordered, adjudged, and decreed:

That the defendant Triangle Mechanical Laboratories Corporation, its officers, agents, servants, and employees, and the defendants Jacob Holtz and Abraham L. Holtz, and their agents, servants, and employees, and all persons holding by, through, or under each and all of said defendants, be and the same are each and all perpetually enjoined and restrained:

■ (a) From using, authorizing the use of, or knowingly selling razor blades to others who use, the coupon, a copy of which is attached below,[1] or any coupon colorably similar thereto, or other coupon, advertisement, or other selling device calculated to cause razor blades not of plaintiff's manufacture to be passed off as and for plaintiff's blades.

■ (b) From using, authorizing others to use, or knowingly selling razor blades to others who use, the word "Blue" and the word "Blade" in juxtaposition; provided, however, that defendants are not hereby precluded from otherwise using the word "blue" to describe their blades as colored blue or oxidized blue in a manner not calculated to cause such blades to be passed off under the distinctive term "Blue Blades."

■ (c) The defendants may sell blades and packages colored blue, but are enjoined from placing or causing to be placed in the hands of retail dealers, jobbers, or others blue safety razor blades so packed as to reasonably suggest or facilitate a substitution as and for Gillette Blue Blades and likely to be in the hands of such dealers and others an instrument of fraud on the plaintiff or which are colorable imitations on the package of plaintiff. Both the packages and blades must bear the full name of the manufacturer in letters readily discernible by the public and as large as the blade and the package reasonably may permit, bearing in mind that the purpose of the same is to prevent the public from thinking that they are getting plaintiff's product and to prevent them from being known or designated or substituted or passed off as and for plaintiff's product.

■ (d) From any use of the name Gillette in connection with the sale of double edge safety razor blades.

■ (e) From passing off, or inducing or enabling others to pass off, any merchandise not the plaintiff's product as and for plaintiff's product, and from any other acts calculated to cause purchasers to believe that defendants' merchandise is the merchandise of the plaintiff, and from otherwise in any manner whatever unfairly competing with the plaintiff.

And it is further ordered, adjudged, and decreed that the plaintiff have judgment for costs against the defendants for the sum of $623.70 as taxed by the clerk of this court, and that the plaintiff have execution therefor. Half to be paid by each defendant.

---

[1]

## 𝔙aluable 𝔇iscount Coupon - 𝔚orth $1.46

### NOTICE TO AUTHORIZED DISTRIBUTOR

*In accordance with our agreement you are authorized to deliver one complete deluxe shaving set on presentation of this coupon, signed and 49c*

=== SPECIAL OFFER ===

| | | |
|---|---|---|
| 10 New Style Blue Blades for Gillette Type Razor | Value | $1.00 |
| 1 High Grade Tube of Shaving Cream | Value | .35 |
| 1 Instant Blade Sharpener | Value | .50 |
| 1 Styptic Pencil (Indispensable in Shaving) | Value | .10 |

*Total Value* **$1.95**

*All for* **49c** & This Coupon

No more than two sets to a customer 𝓥 Limited Supply

This set Includes 1 ⓞ new style Blue Blades for Gillette Type Razor

Name_____ City_____

Address_____ State_____

## Good Friday, November 11th, from 6 P. M. & all day Sat. Nov. 12th